**Reversed and Remanded and Majority and Dissenting Opinions filed September 19, 2017.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-16-00232-CR

---

### MICHAEL E. C. DONALD, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 149th District Court
Brazoria County, Texas
Trial Court Cause No. 77089-CR**

---

## M A J O R I T Y   O P I N I O N

A jury convicted appellant of assaulting a family member, elevated to a felony by a prior conviction for another family-violence assault. *See* Tex. Penal Code § 22.01(b)(2)(A). The jury assessed punishment at seven years' confinement.

In a single issue, appellant contends that his trial counsel rendered ineffective assistance by, among other things, stipulating to three of the four jurisdictional prior convictions for family-violence assault that were alleged in the indictment. This case

presents the rare situation in which we can conclude that counsel was deficient as a matter of law for stipulating to excess prior convictions that otherwise were inadmissible. Our confidence in the verdict is undermined because the evidence of guilt was not overwhelming, and the jury heard highly prejudicial evidence about multiple prior convictions for the same offense for which appellant was being tried.

We reverse the trial court's judgment and remand for a new trial.

## I. BACKGROUND

### A. Indictment and Plea

The State indicted appellant for felony assault against a family member, Sheila Pennington, a person with whom appellant had a dating relationship. The State alleged that appellant caused bodily injury "by striking said Sheila Pennington with the defendant's hand." To elevate the crime to a felony, the State was required to allege and prove one prior family-violence assault conviction. *See* Tex. Penal Code § 22.01(b)(2)(A). The indictment alleged four prior convictions from April 2009, May 2011, November 2013, and July 2015. At the beginning of trial, the State read the entire indictment in front of the jury. Appellant pleaded "not guilty." Then, the trial court asked whether appellant was pleading "true" or "not true" to each "enhancement" paragraph. Appellant pleaded "not true" to the April 2009 conviction and "true" to the other three.

### B. Guilt–Innocence Evidence

The parties do not dispute the existence of a dating relationship. But, evidence of the assault was contested. At about 4:45 a.m. on the morning of the incident that led to the indictment, Pennington's former friend, Annette Bieber, dialed 911 to report that appellant had "beat the hell out of" Pennington. A recording of the 911 call was admitted as an exhibit. Bieber testified that Pennington had called Bieber

2

and said that appellant had "beat her up real bad." Bieber did not live nearby and was not present during the assault.

City of Alvin Police Department Officer Robert Vincent testified that he responded to the call. He described Pennington as being very distraught and crying. He did not believe that Pennington was impaired by any narcotics at the time.

Officer Vincent's body-worn camera footage was admitted as an exhibit in its entirety. In the video, Pennington told Vincent that appellant had been at the house of appellant's friend, Quinton Barden.[1] Pennington said that appellant returned home to charge his iPhone at about 4:00 a.m. He was drunk and "on bars," and a disagreement ensued about whether Pennington had taken his phone. Pennington said that appellant started "beating the shit out of" her and hit her in the back of the head with his fist.

Pennington said that appellant beats her every week, and he had choked her a week before. She said that he "always" beats her in the back of the head so nobody can see it. She said that appellant beat her last October and went to jail for it, and she got him out by signing an affidavit of non-prosecution. She said that she did not like appellant seeing Barden because Barden was a "crack head" who used appellant to sell drugs.

When Vincent asked her if she wanted to file charges, she said that appellant said that appellant's friends would "go after" her family. She said that appellant had been in and out of prison and was a thug. She said that appellant threatened to kill her whole family and rape her mother and daughter. She said that appellant's friends would lie for him and say that he never left Barden's house that night. She said that

---

[1] Other evidence showed that Barden lived about seven blocks from appellant and Pennington.

appellant had been texting her, saying that all his friends had been with him and heard his "big mouth all night."[2] She also said that appellant took $200 from her, that he never works, and that he just "takes, and takes, and takes."

An emergency medical technician looked at Pennington's head and told Vincent that there was a quarter-size knot on the back. At trial, a picture of the back of Pennington's head was admitted as an exhibit. Pennington made a brief written statement concerning the events and her desire to prosecute. When Vincent returned to his patrol car to do a warrant check, the body camera recorded Vincent saying, "She's not going to cooperate anyways once it gets to court; she's going to do exactly what she did the last time."

Vincent was correct. Shortly before trial, Pennington gave a written statement to the district attorney's office, claiming that she had lied in her earlier statements. The State called her as a witness at trial, nonetheless. Pennington testified that she was "tripping on acid" that night. She testified that she injured her head because she slipped and fell off her porch. She testified that appellant never hit her. She had been mad at appellant because she was not invited to Barden's house, and she thought appellant was "over there with other chicks." She testified that her friend, Bieber, had a vendetta against appellant because Pennington started dating appellant only three months after Pennington's former husband had died. Pennington believed that Bieber was trying to get Pennington in trouble; Pennington had told Bieber that Pennington was high and had "dope" in the house. Pennington claimed to have lied to the police because she was scared they would find acid in her house. Through

---

[2] While relaying this information, Pennington held up a cell phone and appeared to read from it.

questioning by the State, Pennington also admitted to making many of the allegations in her first written statement to police.[3]

The State also called Pennington's adult son, who was in jail at the time of trial. He testified that he had observed Pennington high on acid in the past. He corroborated Pennington's story about how and when she bought the acid: he directed her to an old friend who used to sell it.

After the State's witnesses testified, appellant's trial counsel stipulated to the three allegations of jurisdictional prior convictions to which appellant had pleaded "true." The State abandoned the first allegation. The trial court admitted Exhibits 5, 6, and 7. Exhibit 5 is the complaint, information, docket entry, and judgment concerning appellant's May 2011 conviction for "assault causes bodily injury family violence," committed by "striking said Misty Brogan about the body with the defendant's hand." The judgment shows that appellant pleaded guilty and was assessed punishment at twenty-two days' confinement. Exhibit 6 is a November 2013 judgment of conviction for "assault family violence," showing that appellant pleaded "guilty" and was assessed punishment at ten months' confinement. Exhibit 7 is a July 2015 judgment of conviction for "assault causes bodily injury family member," showing that appellant pleaded "guilty" and was assessed punishment at thirty days' confinement.

Appellant testified on direct examination that he did not hit Pennington, and he had left the house sometime between 7:00 p.m. and 9:00 p.m. that night to go to

---

[3] Trial counsel did not object. *But see, e.g.*, *Hughes v. State*, 4 S.W.3d 1, 5, 7 (Tex. Crim. App. 1999) (holding that a trial court abuses its discretion, when faced with a proper objection, if the court "allows the State to admit impeachment evidence for the primary purpose of placing evidence before the jury that was otherwise inadmissible"; reasoning that when the State elicits no favorable testimony from a witness, the trial court errs by allowing the State to impeach the witness with hearsay under the guise of impeaching the witness with prior inconsistent statements).

Barden's house. He testified that he drank a lot that night, and he did not go home. He admitted that he was a "pothead." He also admitted that for two of the prior convictions, he was "completely guilty." But for the last one, he claimed that Pennington had attacked him with a broomstick, and he pleaded "guilty" because "they held me in jail so long."

On cross-examination, appellant agreed that he had "already stipulated true" for the convictions from Exhibits 5, 6, and 7.[4] Appellant agreed with the State that he was convicted of "family violence" in April 2009 and "assault family violence" in November 2013.[5] He also testified that he had been convicted of assaulting Pennington about a year and a half before this trial, but he "didn't do it." He testified that he had two theft convictions and that he was convicted of felony theft in May 2011. He acknowledged that he pleaded "guilty" to a "state jail offense of theft with two or more priors," but he did not consider himself a thief. He did not consider his "theft by check" conviction in 1998 to be a "theft." He testified that he was "thrown in jail forever" on the theft charge. And, he admitted that he was convicted of attempted escape and served forty-eight days in state jail on that charge.

C.     **Jury Charge and Closing Arguments**

The jury charge included a paragraph stating that the jurisdictional prior conviction was not contested and could not be used to determine guilt.[6] But the

---

[4] The State also showed appellant Exhibits 4 and 9 through 17 and asked appellant questions such as, "Is that you?"; "Are these documents pertaining to you?"; and "Is that your signature?" These exhibits were admitted during punishment and concern appellant's criminal history. *See infra* note 7.

[5] The April 2009 conviction was one of the jurisdictional allegations from the indictment, but not one to which appellant stipulated.

[6] The paragraph appeared as follows:

A felony Assault Family Violence offense requires proof of a prior family violence conviction, but by the agreement of the State and the defendant that element is not

application paragraph also required the jury, in order to find appellant guilty, to find that appellant previously had been convicted of one of the three offenses for which appellant had pleaded "true." The charge included paragraphs about each of the three prior convictions from May 2011, November 2013, and July 2015. The charge did not include any other instructions concerning prior convictions or extraneous offenses.

During closing argument, the State told the jurors to focus on the body camera footage because the "body camera doesn't lie." And the State noted that Pennington's written statement was not admitted, but "the words of her statement came in" through her testimony on the witness stand. The State emphasized that appellant was a convicted felon who had been "convicted of abusing her before." The State told the jury to "keep that in mind when judging his credibility," and the State pointed out that appellant had "stipulated to those priors." The State referred to Pennington as a "puppet" and described the situation as "[c]lassic battered women." The State asked the jury to "send a message to him that this has got to stop."

Defense counsel argued that Pennington had lied to the police because she was on acid and scared of having her house searched for the remaining drugs. Counsel also addressed the prior convictions, pointing to the language in the jury charge stating that the jurisdictional prior convictions could not be used for any purpose in determining guilt. Counsel explained, "Just because someone kicked their dog yesterday doesn't mean they kicked their dog today."

contested, therefore no evidence of the prior convictions is necessary, and that jurisdictional element is satisfied. You are further instructed that the jurisdictional prior convictions may not be used for any other purpose in determining guilt of the defendant on the charged occasion.

7

**D. Punishment**

Appellant went to the jury for punishment. The court admitted Exhibits 4 and 9 through 22 concerning appellant's criminal history.[7] Appellant testified at punishment and explained that he got an evading-arrest conviction because he had accumulated some speeding tickets, and an officer had told him "if he caught me driving again he was going to take me to jail." He got a theft conviction because his

---

[7] Exhibit 4 included the complaint, information, affidavit, and judgment for appellant's April 2009 conviction for "assault causes bodily injury family violence" against a woman he went to high school with. Exhibit 9 included an indictment for appellant assaulting his brother in July 2013, elevated to a felony by the April 2009 conviction, and a docket sheet showing that appellant pleaded guilty to a reduced charge of misdemeanor assault. Exhibit 9 relates to Exhibit 6, the November 2013 judgment of conviction. Exhibit 10 included the indictment and a docket entry showing a plea of guilty in July 2015 for the assault against Pennington. Exhibit 11 included the complaint with affidavit, plea agreement, and judgment for appellant's September 2008 felony theft conviction. Exhibit 12 included the indictment, docket entries, plea agreement, and judgment for appellant's May 2011 felony theft conviction. Exhibit 12 also included a petition for revocation of a probated sentence, alleging among other things that appellant possessed a controlled substance, i.e., alprazolam, in September 2011 and drove while intoxicated in November 2011. And Exhibit 12 included a plea agreement on the motion to revoke and a judgment revoking community supervision. Exhibit 13 included the indictment, plea agreement, and judgment for appellant's April 2009 conviction for attempted escape from custody. Exhibit 14 included, among other things, an indictment for appellant's unlawful restraint by striking a person with his hand and forcing that person into his vehicle, appellant's guilty plea to the lesser-included offense of misdemeanor assault, and a judgment for that July 2001 conviction. Exhibit 15 included an information, complaint, and judgment for a July 2003 conviction of a Class B misdemeanor theft concerning a power washer and cash. Exhibit 16 included an information, complaint, and orders granting and revoking community supervision for appellant's February 1999 conviction for evading arrest. Exhibit 17 included the information, complaint, and judgment for appellant's January 2007 conviction for criminal mischief. Exhibit 18 included the information, complaint, and judgment for appellant's August 2007 conviction for interfering with an emergency call. Exhibit 19 included the information, complaint, order granting community supervision, motion to revoke, and a January 2004 order revoking community supervision for possessing a prohibited weapon; and the revocation order found that appellant stole a power washer in July 2003. Exhibit 20 included the information, complaint, and judgment for appellant's July 2005 conviction for failure to display a valid drivers' license, which had been reduced from the charge of driving with a suspended or invalid license. Exhibit 21 included an information, complaint, and judgment for a November 2011 conviction for driving while intoxicated. Exhibit 22 included an information, complaint, and judgment for appellant's January 2007 conviction for unlawfully carrying a handgun.

former girlfriend's mother stole his checkbook, and he "couldn't sort them out," and he wrote two bad checks for groceries. He explained that he got another theft conviction because he was "hanging out with the wrong people," and a woman had stolen a pair of pants, and appellant had offered to pay for them. Regarding his various assault convictions, appellant testified, "I guarantee you, in every one of those assault charges, I was the one that was beat up."

On cross-examination, appellant testified that he received a conviction for unlawfully carrying a handgun because he bought the gun for his dad. Regarding a prior criminal-mischief charge, appellant claimed that the complainant drove over appellant and "broke the whole right side of my body." Regarding a prior conviction for interfering with an emergency call, appellant claimed that his sister threw a phone at him and "hit me upside the head and knocked me out." He acknowledged that his April 2009 conviction for "assault causes bodily injury family violence" was against a woman he went to high school with, and his May 2011 conviction for "assault causes bodily injury family violence" was against his sister. His November 2013 conviction for "assault family violence" was against his brother.

Appellant agreed with the State that he had been arrested about twenty-five times. When the State asked if appellant agreed with the jury's verdict, appellant responded, "Show me where you found me guilty. Show me where you put me in the house. I got two other friends that'll come up here and testify right now that I was at their house all night."[8]

---

[8] Pennington also testified at the punishment phase in support of appellant's character.

The jury charge on punishment did not instruct the jury that in order to consider extraneous crimes or bad acts, it had to be shown beyond a reasonable doubt that appellant committed the crime or bad act.[9]

The jury assessed punishment at seven years' confinement.

## E.    Post-Trial

Appellate counsel filed a motion for new trial. The sole ground alleged that the verdict was "contrary to the law and evidence." At a hearing on the motion, three witnesses testified: Quinton Barden, Mandy Brown, and appellant's brother Nick Donald.

The witnesses testified similarly that they were at Barden's house with appellant on the night of the incident for which appellant was charged, that no attorney contacted them to discuss the facts of the case, and that they would have been available to testify. Barden and Brown testified that appellant was in the garage when the couple went to sleep at about 1:00 a.m. or 2:00 a.m. They testified that appellant slept in the garage and was found there at about 9:00 a.m. Nick testified that appellant was passed out in the garage when Nick left at 2:38 a.m. He testified that Pennington had a bad reputation for truthfulness and she tended to lie about everything. Barden testified that he did not allow Pennington at his house because she was loud and very problematic.

Neither trial counsel nor appellant testified at the hearing. At the conclusion of the hearing, appellate counsel argued that "those witnesses should have at least

---

[9] *But see Delgado v. State*, 235 S.W.3d 244, 252 (Tex. Crim. App. 2007) (citing Tex. Code Crim. Proc. art. 37.07, § 3(a)(1)) ("[T]he trial judge must *sua sponte* instruct the jury at the punishment phase concerning [Article 37.07], including the fact that the State must prove any extraneous offenses beyond a reasonable doubt.").

been called during the course of the trial." There was no mention of ineffective assistance of counsel. The trial court denied the motion.

## II.   INEFFECTIVE ASSISTANCE OF COUNSEL

In a single issue, appellant contends that his counsel rendered ineffective assistance by (1) failing to investigate and present testimony from the three alibi witnesses who testified at the hearing on the motion for new trial, (2) failing to object to hearsay and request a limiting instruction regarding Pennington's written statement, (3) stipulating to three jurisdictional prior convictions rather than only one, and (4) failing to object to evidence of extraneous offenses at punishment or to request a beyond-a-reasonable-doubt instruction.

First, we review the general standards for ineffective assistance. Then, we hold that appellant's trial counsel performed deficiently by allowing appellant to stipulate to three of the four prior convictions alleged in the indictment. Finally, we conclude that appellant suffered prejudice.

### A.   General Standards

To prevail on a claim of ineffective assistance, an appellant must show that (1) counsel's performance was deficient by falling below an objective standard of reasonableness and (2) counsel's deficiency caused the appellant prejudice—there is a probability sufficient to undermine confidence in the outcome that but for counsel's errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984); *Perez v. State*, 310 S.W.3d 890, 892–93 (Tex. Crim. App. 2010). An appellant must satisfy both prongs by a preponderance of the evidence. *Perez*, 310 S.W.3d at 893.

Generally, a claim of ineffective assistance may not be addressed on direct appeal because the record usually is not sufficient to conclude that counsel's

performance was deficient under the first *Strickland* prong. *See Andrews v. State*, 159 S.W.3d 98, 103 (Tex. Crim. App. 2005); *see also Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005) ("A reviewing court will rarely be in a position on direct appeal to fairly evaluate the merits of an ineffective assistance claim.").

"Review of counsel's representation is highly deferential, and the reviewing court indulges a strong presumption that counsel's conduct fell within a wide range of reasonable representation." *Salinas*, 163 S.W.3d at 740. "To overcome the presumption of reasonable professional assistance, any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Id.* (quotation omitted).

It is the "rare case" when an appellant raises a claim of ineffective assistance on direct appeal and the record is sufficient to make a decision on the merits. *Andrews*, 159 S.W.3d at 103. We must presume that trial counsel's performance was adequate unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *State v. Morales*, 253 S.W.3d 686, 696–97 (Tex. Crim. App. 2008) (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)). To overcome the hurdle of establishing deficient performance on direct appeal, "the record must demonstrate that counsel's performance fell below an objective standard of reasonableness as a matter of law, and that no reasonable trial strategy could justify trial counsel's acts or omissions, regardless of his or her subjective reasoning." *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011). An appellate court may find deficient performance on a silent record if the court cannot conceive of any reasonable trial strategy for counsel's actions. *See Andrews*, 159 S.W.3d at 103.

12

## B.    Deficient Performance

Appellant contends that trial counsel was ineffective by deciding to stipulate to three of the four prior convictions alleged in the indictment for purposes of establishing jurisdiction. And, appellant complains that the State read aloud all four prior convictions alleged in the indictment and adduced additional evidence of the convictions. The State responds that trial counsel "could have reasonably anticipated that some of Appellant's prior Assault—Family Violence convictions could have been used to impeach Appellant's character for truthfulness," citing Rule 609 of the Texas Rules of Evidence.

Initially, we note that the issue in this case is not whether trial counsel may have had a reasonable strategy to stipulate, or not stipulate, to prior convictions alleged for purposes of establishing jurisdiction. "[T]he decision to stipulate to evidence of past convictions would seem to be a classic example of trial strategy." *Stafford v. State*, 758 S.W.2d 663, 673–74 (Tex. App.—Houston [1st Dist.] 1988) (reasonable trial strategy to stipulate to prior convictions during punishment stage of trial), *rev'd on other grounds*, 813 S.W.2d 503 (Tex. Crim. App. 1991). The issue presented in this case is whether, after deciding to stipulate to a jurisdictional prior conviction, counsel could have had any reasonable trial strategy for stipulating to more than the statutorily required number of convictions.

Ordinarily, when the State alleges a prior conviction for jurisdictional purposes, a defendant may stipulate to the allegation and prevent the State from adducing evidence of the prior conviction other than the stipulation. *See Hollen v. State*, 117 S.W.3d 798, 802 (Tex. Crim. App. 2003) (no error to admit the stipulation into evidence); *Robles v. State*, 85 S.W.3d 211, 213–14 (Tex. Crim. App. 2002) (error to admit the judgment of conviction into evidence). *See generally Tamez v. State*, 11 S.W.3d 198, 202–03 (Tex. Crim. App. 2000). And, when the State alleges

13

more convictions than necessary to establish jurisdiction, a defendant may stipulate to the statutorily required number of prior convictions necessary to establish jurisdiction. *See Tamez*, 11 S.W.3d at 202–03. Under these circumstances, the State may not read the indictment allegations concerning the additional prior convictions or adduce extrinsic evidence of any of the convictions, including the one to which the defendant stipulated. *See Hernandez v. State*, 109 S.W.3d 491, 493 (Tex. Crim. App. 2003) (per curiam) (error when the State read and proved three prior convictions when the offense of felony driving while intoxicated required proof of only two prior convictions); *Tamez*, 11 S.W.3d at 202–03 (error when the State read and proved six prior convictions although the defendant offered to stipulate to the required two); *see also, e.g., Taylor v. State*, 442 S.W.3d 747, 751–52 (Tex. App.—Amarillo 2014, pet. ref'd) (reversing conviction when the defendant offered to stipulate to one prior conviction for family-violence assault, but the indictment alleged two prior convictions and the trial court admitted judgments for both convictions); *Elliot v. State*, 56 S.W.3d 780, 781 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd) ("In a felony DWI case [requiring two prior convictions], where a defendant agrees to stipulate to two previous DWI convictions, the State is permitted to read the indictment at the beginning of the trial, mentioning only the two jurisdictional prior convictions, but is foreclosed from presenting evidence of those convictions during its case-in-chief.").

These holdings are based on Rule 403 of the Texas Rules of Evidence to prevent the admission of "substantially prejudicial and improper evidence during the guilt/innocence phase of trial." *Tamez*, 11 S.W.3d at 202. The evidence is inadmissible because the jury may convict the defendant as a "'bad man,' not because it believed him to be guilty of the instant offense." *Id.* Thus, when a defendant stipulates to the required jurisdictional element, any prior convictions

14

beyond the jurisdictional element "should not be read or proven during the State's case-in-chief" because they are "without probative value and can serve only to improperly prove the defendant's 'bad character' and inflame the jury's prejudice." *Id.* at 202–03.

Of course, admitting to prior convictions can be a matter of sound trial strategy if the prior convictions are admissible. *See Huerta v. State*, 359 S.W.3d 887, 891 (Tex. App.—Houston [14th Dist.] 2012, no pet.). It is common for a defendant to admit to a prior conviction "because doing so removes the sting from an attack that would otherwise come from the state." *Id.* at 891–92. And, it may be strategic to open the door to extraneous offenses to show a witness's bias. *See Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009).

Generally, however, if a prior conviction is clearly inadmissible, "there can be no reasonable trial strategy for introducing it before the jury." *Huerta*, 359 S.W.3d at 892 (citing *Robertson v. State*, 187 S.W.3d 475, 485–86 (Tex. Crim. App. 2006)). In *Robertson* and *Ex parte Menchaca*, for example, the Court of Criminal Appeals held that trial counsel performed deficiently by allowing the admission of prejudicial prior convictions that were inadmissible under Rule 609 to impeach the defendant's testimony. *See Robertson*, 187 S.W.3d at 481–86 (trial counsel elicited evidence from appellant about inadmissible prior convictions and opened the door to cross-examination of the same subject); *Ex parte Menchaca*, 854 S.W.2d 128, 131–33 (Tex. Crim. App. 1993) (trial counsel failed to object to cross-examination about an inadmissible prior conviction).

To pass over the admission of prejudicial and arguably inadmissible evidence may be strategic, but there is "no strategic value" to pass over the admission of "prejudicial and clearly inadmissible evidence." *Ex parte Menchaca*, 854 S.W.2d at 132 (quoting *Lyons v. McCotter*, 770 F.2d 529, 534 (5th Cir. 1985)); *see also*

*McCook v. State*, 402 S.W.3d 47, 52 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) (noting that counsel may strategically decline to object to an "arguably inadmissible prior conviction"). Demonstrating that the defendant is simply "not a liar" is not a reasonable trial strategy to justify placing before the jury prejudicial and clearly inadmissible evidence of prior convictions. *See Robertson*, 187 S.W.3d at 484 (holding that trial counsel performed deficiently by "allowing the jury to hear prejudicial and clearly inadmissible evidence because this evidence could serve no strategic value including demonstrating that appellant is not a liar"). Often there is "no strategic basis for allowing the jury to hear that [the defendant] previously had been convicted of the same offense for which he stood trial." *Ex parte Menchaca*, 854 S.W.2d at 132 (quoting *Lyons*, 770 F.2d at 534).[10]

Because trial counsel may have a reasonable strategy for stipulating to admissible evidence of prior convictions, we must evaluate the State's contention that trial counsel reasonably could have anticipated that appellant's prior assault convictions would be admissible under Rule 609. *See Huerta*, 359 S.W.3d at 894 (holding that the appellant did not demonstrate deficient performance regarding the

---

[10] *See also Ex parte Skelton*, 434 S.W.3d 709, 722 (Tex. App.—San Antonio 2014, pet. ref'd) ("Where a defendant's credibility is central to her defensive strategy, it is not sound trial strategy to allow the introduction of inadmissible evidence that directly impairs the defendant's credibility without objection."); *Lemons v. State*, 426 S.W.3d 267, 272 (Tex. App.—Texarkana 2013, pet. ref'd) ("Extraneous offenses are inherently prejudicial, and when counsel fails to object to numerous extraneous and prejudicial matters, counsel may be ineffective." (quotation omitted)); *Garcia v. State*, 308 S.W.3d 62, 68 (Tex. App.—San Antonio 2009, no pet.) ("Given the inherently prejudicial nature of extraneous offense evidence, the fact that the evidence would not have been otherwise admissible by the State during guilt/innocence, and the fact that Garcia's defense rested almost entirely on his credibility, there could have been no reasonable trial strategy for Garcia's counsel to elicit and open the door to the similar extraneous offense and the numerous instances of 'bad acts.'"); *Stone v. State*, 17 S.W.3d 348, 349 (Tex. App.—Corpus Christi 2000, pet. ref'd) (holding, on a silent record, that "no reasonably competent attorney could have believed that introducing that evidence [of a prior conviction for murder] amounted to sound trial strategy"); *Brown v. State*, 974 S.W.2d 289, 293 (Tex. App.—San Antonio 1998, pet. ref'd) ("Extraneous offenses are inherently prejudicial and when counsel fails to object to numerous extraneous and prejudicial matters, counsel is ineffective.").

admission of a prior conviction because the trial court would have acted within its discretion to admit the conviction if the State had sought to use it for purposes of impeachment under Rule 609); *see also Robertson*, 187 S.W.3d at 483 n.10 (citing *Commonwealth v. Moore*, 715 A.2d 448, 452 (Pa. Super. Ct. 1998)) (noting that trial counsel errs by introducing evidence of a defendant's prior convictions for purposes of preventing the prosecution from first bringing out such evidence on cross-examination if the prior convictions are unavailable to the prosecution for impeachment purposes).

> Rule 609(a) provides:
>
> (a) In General. Evidence of a criminal conviction offered to attack a witness's character for truthfulness must be admitted if:
>> (1) the crime was a felony or involved moral turpitude, regardless of punishment;
>> (2) the probative value of the evidence outweighs its prejudicial effect to a party; and
>> (3) it is elicited from the witness or established by public record.

Tex. R. Evid. 609. Even if the conviction is for a felony or a crime of moral turpitude, a court will balance several nonexclusive factors to determine if the probative value outweighs the prejudicial effect: (1) the impeachment value of the prior crime; (2) the temporal proximity of the past crime relative to the charged offense and the witness's subsequent history; (3) the similarity between the past crime and the offense being prosecuted; (4) the importance of the defendant's testimony; and (5) the importance of the credibility issue. *Theus v. State*, 845 S.W.2d 874, 880 (Tex. Crim. App. 1992); *Huerta*, 359 S.W.3d at 892 (reviewing these factors in the context of a claim for ineffective assistance because "if the evidence were admissible and the state were permitted to use it for purposes of impeachment, counsel would not

17

be ineffective for deciding to blunt the effect of a prior conviction by discussing it candidly on direct examination").

In this case, appellant stipulated to three of the four convictions alleged in the indictment by pleading "true" in front of the jury.[11] Trial counsel again stipulated to

[11] Construing appellant's brief liberally, we consider appellant's complaint about stipulating to excessive jurisdictional convictions to encompass a complaint about the pleas of "true." *See* Tex. R. App. P. 38.1(f) (statement of issue or point "will be treated as covering every subsidiary question that is fairly included"); Tex. R. App. P. 38.9 (briefing rules to be construed liberally). Because the State alleged the prior convictions for jurisdictional purposes, not as punishment enhancements, appellant was not required to plead "true" or "not true" to the prior convictions. *See Martin v. State*, 795 S.W.2d 289, 292 (Tex. App.—Houston [14th Dist.] 1990, no pet.). His pleas of "true," however, were stipulations to historical facts. *See Harvey v. State*, 611 S.W.2d 108, 111 (Tex. Crim. App. 1981) (equating the defendant's plea of "true" for a "historical fact" of a prior conviction to a stipulation: "Where the state alleges, for enhancement of punishment purposes, a prior conviction, it, of course, has the burden of proof to prove that the prior conviction was a final conviction under law. Here, however, appellant himself, by pleading 'True,' removed this burden from the state. . . . Thus if the accused stipulates the prior conviction, that issue is resolved." (quotation omitted)).

A plea of "true," just as a stipulation, is a judicial admission that relieves the State of further proving the jurisdictional allegations. *See Bryant v. State*, 187 S.W.3d 397, 400–02 (Tex. Crim. App. 2005) (holding that by stipulating to prior convictions for jurisdictional purposes the defendant made a "judicial admission which removed the need for proof of those convictions"); *Sylvester v. State*, 615 S.W.2d 734, 736 (Tex. Crim. App. [Panel Op.] 1981) (noting that a plea of "true" to a prior conviction alleged for enhancement purposes "constituted a judicial admission and a waiver of evidence of the prior conviction"); *see also Griffin v. State*, 181 S.W.3d 818, 821 & n.5 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) (noting that a judicial admission in open court is sufficient for proving a prior conviction, and the typical judicial admission related to enhancement paragraphs is a plea of "true"); *Smith v. State*, 105 S.W.3d 203, 205–06 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) (noting that the defendant had "stipulated" to the prior DWI convictions alleged as jurisdictional enhancements and that the defendant had pleaded "true" to the two jurisdictional paragraphs). A judicial confession, whereby a defendant acknowledges that indictment allegations are "true and correct," functions as a stipulation. *See Menefee v. State*, 287 S.W.3d 9, 13–14 (Tex. Crim. App. 2009) (noting that a "stipulation of evidence or judicial confession" must establish every element of the offense charged if the defendant enters a guilty plea, and a defendant judicially confesses by "acknowledging generally that the allegations against him are in fact true and correct").

Thus, trial counsel's silence during the pleas of "true" beyond the first resulted in the same effect as stipulating to the convictions: the jury heard evidence of appellant's prior convictions. *Compare Ex parte Menchaca*, 854 S.W.2d at 131–33 (deficient performance when trial counsel

those convictions outside the jury's presence. The record belies any possibility that counsel reasonably could have anticipated that these three convictions would be admissible to impeach appellant under Rule 609 such that counsel might have operated under a strategy of removing the "sting" from cross-examination.

One of the three convictions was neither a felony nor a crime of moral turpitude—appellant's November 2013 conviction for assaulting his brother. Although an assault by a man against a woman has been held to be a crime of moral turpitude, an assault by a man against another man is not a crime of moral turpitude. *See Patterson v. State*, 783 S.W.2d 268, 271 (Tex. App.—Houston [14th Dist.] 1989, pet. ref'd) ("[M]isdemeanor assaultive offenses which do not involve violence against women are not crimes involving moral turpitude.").[12] Because appellant stipulated to another prior conviction, evidence of this conviction not involving moral turpitude was clearly inadmissible. Thus, even if counsel reasonably could have believed some of appellant's assault convictions were admissible under Rule 609, stipulating to the November 2013 conviction while also stipulating to the others could not have been the result of trial strategy. *See Ex parte Menchaca*, 854 S.W.2d at 131–33; *see also Robertson*, 187 S.W.3d at 483–84 & n.10.

Further, considering the evidence in this record and the *Theus* factors, it would have been an abuse of discretion to believe that the probative value of multiple prior convictions for family-violence assault would outweigh their prejudicial effect.

---

failed to object to inadmissible prior conviction), *with Robertson*, 187 S.W.3d at 481–86 (deficient performance when trial counsel elicited evidence about inadmissible prior convictions).

[12] *See also Knox v. State*, 487 S.W.2d 322, 326 n.2 (Tex. Crim. App. 1972) ("It is observed that aggravated assault, not committed on a female, is not a misdemeanor involving moral turpitude and is not available for impeaching." (citation omitted)); *Garza v. State*, 160 S.W.2d 926, 927 (Tex. Crim. App. 1942) ("[S]imple assault is not a crime involving moral turpitude."). *See generally Hardemann v. State*, 868 S.W.2d 404, 405–07 (Tex. App.—Austin 1993), *pet. dism'd*, 891 S.W.2d 960 (Tex. Crim. App. 1995).

Assault convictions have a low impeachment value and a high potential for prejudice because they involve violence rather than deception, so this factor weighs against admission. *See Theus*, 845 S.W.2d at 881. Although the temporal proximity factor favors admission, the similarity factor weighs strongly against admission. *See id.* "[T]he admission for impeachment purposes of a crime similar to the crime charged presents a situation where the jury would convict on the perception of a past pattern of conduct, instead of on the facts of the charged offense." *Id.*

The final two *Theus* factors are related because they depend on the nature of the defense and importance of the defendant's credibility; the State's need to impeach often will increase with the importance of the defendant's credibility to the defense. *See id.* This trial did not present the typical swearing match between the State's witnesses and the defendant. Rather, the complainant recanted her accusation and testified in support of appellant. Thus, the jury primarily was tasked with weighing the credibility of Pennington's out-of-court hearsay statements against her in-court testimony—not weighing her testimony against appellant's. Furthermore, the State impeached appellant's credibility with multiple prior theft convictions and one for attempted escape, which "drastically lessened the State's need to impeach" appellant with convictions for violent crimes identical to the one for which he was on trial. *See Jackson v. State*, 11 S.W.3d 336, 340–41 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd) (reasoning that although the State's need to impeach was "great," the ability of the State to impeach the defendant with several prior theft convictions drastically lessened the State's need to impeach with convictions for aggravated rape and a crime against nature).

In *Theus*, the only factor that weighed against admission was the fact that the prior conviction for arson was a crime of violence and not deception; all the other factors favored admission. *See Theus*, 845 S.W.2d at 881. However, the lack of

20

impeachment value overrode the other four factors because the arson conviction had so little probative value regarding credibility and had much prejudicial effect, and the trial court refused to consider the underlying facts of the arson conviction. *Id.* at 881–82. Similarly, in *Jackson v. State*, the First Court of Appeals held that the trial court abused its discretion during a murder prosecution by admitting prior convictions for rape and a crime against nature. 11 S.W.3d at 341. The court reasoned that the *Theus* analysis "tipped severely against admissibility of the prior convictions" because, even though the temporal proximity and similarity factors favored admission, the prior convictions did not involve deception, and the State had ample evidence to impeach the defendant with a felony and two misdemeanor theft convictions. *Id.* at 340–41. In *Pierre v. State*, the First Court of Appeals similarly held that the trial court abused its discretion during a sexual-assault prosecution by admitting two prior convictions for misdemeanor assaults against women. 2 S.W.3d 439, 442–43 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd). The court reasoned that the first and third *Theus* factors were "dispositive" because the convictions involved violence rather than dishonestly, and misdemeanor assaults against women were similar to the charged crime of sexual assault against a woman. *Id.* at 443.

In this case, analysis of the *Theus* factors leads to a conclusion that appellant's prior convictions for family-violence assault were inadmissible under Rule 609 because (1) the convictions were for crimes of violence rather than deception, (2) the convictions were similar to the crime for which appellant was on trial, and (3) the State's need for impeachment by these convictions was drastically lessened by the State's impeachment of appellant with multiple theft convictions and another felony conviction. *See Theus*, 845 S.W.2d at 881–82; *Jackson*, 11 S.W.3d at 340–41; *Pierre*, 2 S.W.3d at 442–43; *cf. Vasquez v. State*, 417 S.W.3d 728, 731–33 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) (no ineffective assistance when it

21

would not have been an abuse of discretion to admit a conviction for failing to register as a sex offender; the only factor weighing against admissibility was the similarity of the offense to the crime charged); *Huerta v. State*, 359 S.W.3d 887, 892–94 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (no ineffective assistance when it would not have been an abuse of discretion to admit a theft conviction in a robbery prosecution; the similarity factor was neutral, and the other factors favored admission).

Nothing in the record undermines our conclusion that trial counsel could have no reasonable strategy for stipulating to more prior convictions than necessary under *Tamez* based on a reasonable belief that the convictions would be admissible under Rule 609. For example, the record does not show that counsel filed what is now commonly called a "*Theus* motion" to request permission to testify free of impeachment by a prior conviction. *See, e.g.*, *Cisneros v. State*, 290 S.W.3d 457, 468 (Tex. App.—Houston [14th Dist.] 2009) (referring to *Theus* motion), *pet. dism'd, improvidently granted*, 353 S.W.3d 871 (Tex. Crim. App. 2011); *see also Theus*, 845 S.W.2d at 877 (noting that the trial court held a pretrial hearing on counsel's "Motion to Testify Free From Impeachment With Prior Conviction").[13] And, counsel filed a pretrial request for notice of the State's intent to use evidence of extraneous offenses at trial, specifically requesting notice under Rule 609(f) regarding convictions to impeach the "[c]omplaining witness and other civilian witness to be presented by the State." But, counsel did not request notice of the State's intent to use convictions to impeach appellant.[14]

---

[13] Had the trial court erroneously ruled that the convictions were admissible for impeachment, we could envision trial counsel making a strategic decision to stipulate to all of the prior convictions.

[14] *Compare Harper v. State*, 930 S.W.2d 625, 631 (Tex. App.—Houston [1st Dist.] 1996, no pet.) (holding that Rule 609(f) is applicable to a defendant in a criminal case and "requires

As noted above, the decision of whether to stipulate to jurisdictional prior convictions could be a strategic one. Counsel may strategically decide to put the State to its burden of proof, or to stipulate and thereby prevent the admission of prejudicial evidence. But once the decision was made to stipulate in this case, there could be no strategic basis for (1) stipulating to additional inadmissible convictions beyond the statutorily required number, (2) allowing the State to read more than one of the allegations in the indictment, and (3) failing to object to extrinsic evidence of the convictions. Based on this record, the strong presumption of reasonable professional assistance has been rebutted. Trial counsel performed deficiently as a matter of law.

## C.     Prejudice

Under the second prong of the *Strickland* test, a defendant must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. In the context of deficient performance during the guilt–innocence stage of trial, the question is "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. This test does not require the defendant to show that "counsel's deficient conduct more likely than not altered the outcome in the case." *Id.* at 693. Rather, a "reasonable probability" of a different outcome is a "probability sufficient to undermine confidence in the outcome." *Id.* at 694.

---

notice to be given upon request, and if the notice is not given, evidence of the prior conviction is not admissible"), *with Geuder v. State*, 142 S.W.3d 372, 374–75 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) (acknowledging this court's precedent is contrary to *Harper*, and suggesting there might be reason to revisit this court's precedent, but declining to do so because any error was harmless).

This test acknowledges that "[t]he result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." *Id.* The "ultimate focus of the inquiry must be on the fundamental fairness of the proceeding." *Id.* at 696. We must determine whether "the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results." *Id.*

In making the prejudice determination, we must consider the totality of the evidence before the jury. *Id.* at 695. "Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect." *Id.* at 695–96. And, a verdict "only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.* at 696.

Considering the totality of the record, we conclude that there is a probability sufficient to undermine our confidence in the outcome that, but for counsel's errors, the jury would have had a reasonable doubt respecting guilt. In reaching this conclusion, we balance the following factors:

| **Lessened Likelihood of Prejudice** | **Increased Likelihood of Prejudice** |
|---|---|
| • The jury charge informed the jury to not use the jurisdictional prior convictions for "any other purpose in determining guilt of the defendant on the charged occasion." <br><br> • Appellant's credibility was validly impeached by theft and other felony convictions. | • Evidence of multiple prior convictions for the same offense is inherently prejudicial and undermines a substantial right to a fair trial. <br><br> • The evidence of guilt was not overwhelming. <br><br> • The State adduced extrinsic evidence of the prior convictions, including some |

24

| | |
|---|---|
| • The jury already would know that appellant had been convicted of at least one family-violence assault. | similarities to the crime charged.<br><br>• The parties referred to the prior convictions during argument. |

The factor that most heavily weighs against a finding of prejudice is that the jury charge included an instruction to not use the prior convictions for determining appellant's guilt on the charged occasion. Generally, we will presume that the jury obeys an instruction to disregard evidence, and the giving of this instruction cures the admission of inadmissible and prejudicial evidence. *See, e.g.*, *Gardner v. State*, 730 S.W.2d 675, 696 (Tex. Crim. App. 1987), *cited in Gamboa v. State*, 296 S.W.3d 574, 580 & n.12 (Tex. Crim. App. 2009) ("Instructions to the jury are generally considered sufficient to cure improprieties that occur during trial. And we generally presume that a jury will follow the judge's instructions." (footnote omitted)). The Court of Criminal Appeals has applied this presumption, for example, when a witness testified about a collateral offense or transaction by reference to the defendant's being incarcerated, and the trial court gave a prompt oral instruction to disregard. *See Tennard v. State*, 802 S.W.2d 678, 685 (Tex. Crim. App. 1990). But, at least for the admission of evidence of an extraneous offense, the Court of Criminal Appeals has declined to apply this presumption when an oral instruction was given belatedly and again in the jury charge, rather than promptly after admission. *See Fuller v. State*, 827 S.W.2d 919, 926–27 (Tex. Crim. App. 1992) (citing *Tennard*, 802 S.W.2d at 685) (holding that the trial court's instruction to disregard any evidence that the defendant previously had been convicted of a crime was not "prompt" when included in the jury charge, so the instruction "in and of itself did not cure the error"). Furthermore, instructions do not necessarily cure error in the admission of evidence if the evidence is "clearly calculated to inflame the minds of

the jury and is of such a character as to suggest the impossibility of withdrawing the impression produced on their minds." *Gardner*, 730 S.W.2d at 696 (quoting *Campos v. State*, 589 S.W.2d 424, 428 (Tex. Crim. App. 1979)).

The instruction in this case was not given after a stray remark by a witness, *see Tennard*, 802 S.W.2d at 685, but rather, after abundant evidence of multiple convictions, and then only in the jury charge. The written instruction did not instruct the jury to "disregard" the evidence in its entirety, but that "the jurisdictional prior convictions may not be used for any other purpose in determining guilt of the defendant on the charged occasion." The evidence, including three judgments of conviction, was still admitted, and the jury was not instructed about what consideration they could give to the evidence of prior convictions. *See Walls v. State*, 548 S.W.2d 38, 40–41 (Tex. Crim. App. 1977) (finding harmful error from the admission of evidence of an extraneous robbery even though the trial court instructed the jury in the charge that it could not consider evidence of extraneous offenses "as any evidence of guilt in this case"; reasoning that because the charge failed to instruct the jury "what consideration they could give to the evidence," the jury was unrestrained and free to consider that the defendant was "a criminal generally").

Admission of evidence concerning three prior convictions for violent crimes identical to the one for which appellant was on trial is "inherently prejudicial." *See generally Abdnor v. State*, 871 S.W.2d 726, 738 (Tex. Crim. App. 1994) ("We have consistently acknowledged that the introduction of extraneous offenses to the jury is inherently prejudicial." (quotation omitted)). The rationale for *Tamez*, indeed, is that prior convictions for the same offense allow a jury to focus improperly on a defendant's bad character, violating the basic prohibition on convicting someone based on character conformity. *See Tamez*, 11 S.W.3d at 202 (noting the policy of ensuring a person is tried for the offense he allegedly committed, not for the type of

person that he may be). When the prior convictions are for the same offense for which the defendant is on trial, the evidence tips "far on the inflammatory and prejudicial side of the character-evidence spectrum." *See Herring v. State*, 147 S.W.3d 390, 396 (Tex. Crim. App. 2004) (holding that it was harmless error to inform the jury that the conviction underlying the prosecution for failure to register as a sex offender was indecency with a child because substantial evidence supported the conviction and the two offenses were not similar; reasoning that although "general criminality is a prohibited inference, it is not as strong or inflammatory an inference as the conformity inference that arises from substantially similar offenses").

When a jury receives evidence of multiple prior convictions for the same offense, a jury may convict the defendant because "he was a 'bad man,' not because it believed him to be guilty of the instant offense." *Tamez*, 11 S.W.3d at 202. For these reasons, courts of appeals have readily found that a defendant's substantial rights were impacted—that is, the error had a substantial and injurious effect or influence on the verdict—by the admission of prior convictions beyond the statutorily required number. *See Taylor v. State*, 442 S.W.3d 747, 752 (Tex. App.—Amarillo 2014, pet. ref'd) (harmful error when the trial court admitted two judgments for family-violence assault although the defendant offered to stipulate to one; "We cannot help but think that the erroneous admission of this prior family assault conviction negatively influenced the jury's verdict."); *Baker v. State*, 52 S.W.3d 882, 886 (Tex. App.—Fort Worth 2001, pet. ref'd) (harmful error from the admission of the two driving-while-intoxicated judgments that related to the stipulation in part because the improperly admitted judgments conveyed that the defendant had been convicted a third time for driving while intoxicated); *Tamez v. State*, 48 S.W.3d 295, 296 (Tex. App.—San Antonio 2001, no pet.) (harmful error

from the reading of the indictment and admission of evidence concerning six driving-while-intoxicated convictions rather than two because a "rational jury would most likely conclude that someone convicted six times of DWI, and accused of it a seventh time, was driving drunk"); *Smith v. State*, 12 S.W.3d 149, 152 (Tex. App.—El Paso 2000, pet. ref'd) (harmful error from the admission of six prior convictions because the prohibition on a defendant being convicted on the basis of character evidence or for being a bad person is a "basic tenet of our criminal justice system").

In this case, not only did the jury hear that appellant had been convicted four times, rather than the statutorily required one time, but the State adduced extrinsic evidence of the convictions. One of the exhibits included an indictment that alleged the manner and means of "striking said Misty Brogan about the body with the defendant's hand"—the same conduct alleged against the complainant in this case. The jury also heard that appellant was convicted for assaulting Pennington, specifically, and the jury heard about the sentences imposed for the prior convictions.

In addition to the inherently prejudicial nature of prior convictions—particularly ones for the same offense for which the defendant was tried—our confidence in the outcome of the trial is undermined because the evidence of guilt was not overwhelming, and the parties referred to the convictions during closing arguments. In *Ex parte Menchaca*, for example, the Court of Criminal Appeals held that counsel's deficient performance in failing to object to a single prior conviction for rape undermined confidence in the verdict of guilt for delivery of a controlled substance. 854 S.W.2d at 132–33. The evidence of guilt was "seriously contested" as it amounted to a "good ole . . . West Texas shouting match" between the defendant and the State's primary witness. *Id.* at 133 (omission in original). The State used the prior conviction to undermine the defendant's credibility during closing argument,

28

contending that the defendant was "not worthy of belief because he was 'a convicted rapist.'" *Id.*

Similarly, we note the Corpus Christi Court of Appeals' reasoning in *Stone v. State*, where the court found deficient performance on a silent record from trial counsel's eliciting evidence about an inadmissible murder conviction during the trial for delivery of a controlled substance. *See* 17 S.W.3d 348, 353 (Tex. App.—Corpus Christi 2000, pet. ref'd). The court held that the defendant was deprived of a fair trial with a reliable result because the defendant was tried for "being a criminal generally," rather than for the crime for which he was indicted. *Id.* at 353–54. The introduction of the prior conviction undermined the defendant's credibility concerning his alibi defense and bolstered the State's witnesses' testimony. *See id.* at 353.

In this case, the State's evidence consisted almost entirely of Pennington's hearsay statements as recorded in the body camera video. Pennington's injury consisted of a small knot on the back of her head, and she testified in support of appellant at trial. The evidence of guilt cannot be described as "overwhelming." The admission of evidence concerning multiple convictions for family violence assault served to undermine appellant's credibility for his alibi defense and bolster Pennington's hearsay statements. *See id.* During closing argument, the State referred to appellant's prior family-violence assault conviction and urged the jury to "keep that in mind when judging his credibility."[15] These circumstances indicate that appellant was prejudiced by counsel's errors. *See Ex parte Menchaca*, 854 S.W.2d at 132–33 (finding prejudice under *Strickland* from the admission of one prior conviction, dissimilar from the crime charged, because guilt was "seriously

---

[15] The State's argument appears to contradict the trial court's instruction to not consider the conviction for purposes of determining appellant's guilt.

contested," the determination of guilt depended on credibility of the witnesses, and the State argued that the defendant was not worthy of belief due to the prior conviction).

Although appellant's credibility was validly impeached by other non-assault convictions and the jury would have known that appellant had one prior conviction for family violence assault, we cannot ignore the probable impact of hearing that appellant had three additional prior convictions for family-violence assault. *See Tamez*, 11 S.W.3d at 202–03; *Taylor*, 442 S.W.3d at 752. Trial counsel attempted to mitigate appellant's prior convictions, arguing, "Just because someone kicked their dog yesterday doesn't mean they kicked their dog today." But, as a result of trial counsel's errors, the jury heard not only that appellant assaulted a family member yesterday, but also that he assaulted a family member the day before, and the day before, and the day before. He was on trial for the fifth family-violence assault, which would lead to the rational, yet impermissible, conclusion that he did it again. *See, e.g.*, *Tamez*, 11 S.W.3d at 202. "[W]hen faced with appellant's apparently unflagging character as a [woman beater], the jury may have convicted him because he was a 'bad man,' not because it believed him to be guilty of the instant offense." *Id.*

As a result of counsel's deficient performance, the result of the proceeding was rendered unreliable and fundamentally unfair. The record reflects appellant suffered prejudice.

### III.   CONCLUSION

Appellant's sole issue is sustained. We reverse the trial court's judgment and remand for proceedings consistent with this opinion.[16]

/s/      Ken Wise
Justice

Panel consists of Chief Justice Frost and Justices Donovan and Wise. (Donovan, J., dissenting).
Publish — Tex. R. App. P. 47.2(b).

---

[16] Because we hold that counsel's errors regarding the stipulation to inadmissible prior convictions sufficiently demonstrate deficient performance and prejudice, we need not and do not address appellant's other allegations of ineffectiveness. *See* Tex. R. App. P. 47.1.