Emmit Charles LYONS,
Petitioner-Appellee,

v.

O.L. McCOTTER, Director, Texas
Department of Corrections,
Respondent-Appellant.

No. 84–1992.

United States Court of Appeals,
Fifth Circuit.

Sept. 13, 1985.

Jim Mattox, Atty. Gen., Charles A. Palmer, Asst. Atty. Gen., Austin, Tex., for respondent-appellant.

Jon R. "Randy" Farrar, Craig S. Lundquist, Sharon Kutzschbach, Staff Counsel For Inmates, Huntsville, Tex., for petitioner-appellee.

Before RANDALL, DAVIS, and HILL, Circuit Judges.

ROBERT MADDEN HILL, Circuit Judge:

The director of the Texas Department of Corrections (the director) appeals from the judgment of the district court which adopted the magistrate's findings, conclusions, and recommendation that the application for writ of habeas corpus of Emmit Charles Lyons, a state prisoner, should be granted and which directed the state of Texas to retry or release Lyons within 120 days of entry of the judgment. The district court reasoned that Lyons was denied effective assistance of counsel in his trial for aggravated robbery with a deadly weapon when his counsel failed to object or request a limiting instruction to cross-examination testimony and closing argument indicating that Lyons had previously been convicted of a similar offense. The court found that the evidence against Lyons was "hardly overwhelming" and concluded that Lyons suffered actual prejudice from his counsel's failure to exclude or limit evidence of the prior conviction. Finding that counsel's failure to object or request a limiting instruction did not constitute reasonable professional assistance, we affirm the district court's judgment granting Lyons habeas relief.

## I. Factual and Procedural Background

Lyons was indicted for the offense of aggravated robbery with a deadly weapon of an attendant at a FasGas Service Station in Terrell, Texas, on August 31, 1981. The State's case-in-chief relied entirely upon the eyewitness testimony of Shelba Jean Holloway, the attendant at the service station. Holloway testified unequivocally and positively at trial that while restocking cigarettes she observed Lyons enter through the front door, approach the counter, ask for a carton of cigarettes and give her a twenty-dollar bill; that after receiving the cigarettes, he pulled out a gun and demanded that Holloway put money and the cigarettes in a sack, which she did; and that Lyons then ordered her into the closet, where she remained until she heard the front door open. She then telephoned the police and at the same time observed Lyons fleeing the scene. Holloway gave the police a general description of the robber: black, medium complexion, about 6 feet 1 inch, 190–200 pounds and dressed in maroon pants and a gray patterned shirt. She testified that the store was well lit, that her focus was directed at Lyons, and that she was able to observe him from two feet away with both full face and side view for about five minutes.

The day after the robbery police officials showed Holloway several albums of pictures but she saw none that resembled the robber. Lyons' picture was not among those shown to Holloway at that time. The next day Holloway was shown six photographs from which she selected a photograph of Lyons and stated that the man represented in Lyons' photograph was the man who robbed her.[1] While several of these photographs including Lyons' appear to have been taken in a custodial setting—resembling a mug shot—only Lyons' photograph displayed the word "Texas" and a number and date in front of his chest.

---

1. Upon receiving an anonymous tip that Lyons was the robber, detective Don Echols, who administered the photographic line-up, included a picture of Lyons obtained from Lyons' parole officer.

Based upon Holloway's photographic line-up identification, Lyons was arrested and subsequently identified by Holloway in a personal line-up.

At his trial, after the state rested, Lyons' retained counsel, John Danish, moved for an instructed verdict, which was denied. Danish presented the testimony of a dozen witnesses in an attempt to establish the defenses of mistaken identity and alibi. The testimony of these witnesses generally established that Lyons had been at the offices of the Texas Employment Commission (TEC) and the Terrell State Hospital, both at Terrell, Texas, on the morning and early afternoon of August 31, 1981. Directly contradicting Holloway's testimony that Lyons had robbed her at gunpoint at 2:30 p.m., both Janet White and Jimmy Oliver testified that Lyons was present at the Kennedy Heights Apartments in Terrell, Texas, between two and three o'clock. The state then established that Oliver was a "good friend" of Lyons and also established that White previously had been convicted of a misdemeanor offense involving moral turpitude.

Danish also called as a witness detective Echols regarding the photographic line-up he showed to Holloway. Specifically, Danish elicited the fact that Lyons' photograph was the only one to include the word "Texas" and a six-digit number. As the district court observed, "[t]he apparent purpose of this question was to suggest that this factor influenced Ms. Holloway's selection of the Petitioner's photograph from the spread." [2] Danish also asked Echols where he obtained the photograph of Lyons, to which he replied, "from his parole officer."

After Danish concluded his examination of Echols, the jury retired and the following colloquy between counsel and the court occurred:

MR. DANISH: I am going to make a standard objection at this point, your Honor.

The witness brought out—I don't know if the witness was advised as to the Motion in Limine that had been filed.[3] The District Attorney indicated that he did advise the witness. He brought it out as part of that report and I did not choose to proceed further with that nor do I think that the elements of what that record is has been opened.

It may be that the previous record is in, which I have no objection to being in, but I do object if the Court allows the State to then go in and explore what that record is. It is obvious it is going to be prejudicial to the Defendant and goes against all Constitutional guarantees of due process, and at this point we are going to take stringent objection to it and let the Court allow what it sees fit.

THE COURT: You may make your objection again for the record when it is asked.

On cross-examination, the prosecutor questioned Echols about the details of Lyons' past criminal record. Echols testified, *without objection* from Danish, that Lyons had previously been convicted for robbery and subsequently paroled. After Echols had been excused as a witness and out of the presence of the jury, Danish moved for a mistrial stating "[d]efense would again urge its objection to all the reading of the supplemental report with reference to the Defendant's conviction for robbery. We feel this has so prejudiced this case that we would move for a mistrial." Without comment the district court overruled Danish's motion. During closing argument the prosecutor stated to the jury:

You heard Don Echols say that this man had been convicted before of robbery. You look at Defendant's Exhibit 9, and there's a question on there asking if he

---

**2.** Holloway testified at both a pre-trial hearing relating to the photographic display and personal line-up and in the jury's presence that the numbers meant nothing to her.

**3.** The motion in limine sought to preclude the *prosecution* from mentioning or alluding to Lyons' prior conviction for the purpose of impeachment or as an extraneous offense until a hearing could be held outside the presence of the jury.

has ever been convicted of anything. "Yes. Convicted of aggravated robbery; made parole." He's done it once.

Lyons' counsel again failed to object to this statement regarding Lyons' prior criminal record.

The jury found Lyons guilty of the offense of aggravated robbery with a deadly weapon and the district court then sentenced him to confinement in the state penitentiary for a term of forty years. Lyons effected a direct appeal from his conviction, and the Texas Court of Appeals affirmed the conviction. Lyons then filed two applications for state habeas corpus relief. These applications were denied by the Texas Court of Criminal Appeals.

Lyons thereafter filed this federal habeas corpus petition. He argued that the evidence presented by the state was insufficient to sustain the jury's verdict of guilty because it was based upon identification by Holloway which resulted from impermissibly suggestive pre-trial identification procedures and that he was denied effective assistance of counsel by his trial attorney. The district court, adopting the magistrate's findings, concluded that the prosecution presented sufficient evidence to support a finding of guilt beyond a reasonable doubt. As to the second ground for relief, however, the court determined that Lyons' application should be granted. It concluded that Danish's failure to object to the introduction of Lyons' prior criminal record or to request a limiting instruction constituted ineffective assistance of counsel. The director then perfected this appeal as to only the issue of ineffective assistance of counsel.[4]

## II. *Ineffective Assistance of Counsel*

In evaluating whether Lyons' conviction must be reversed because of ineffective assistance from his trial counsel, we utilize the two-part test set forth by the Supreme Court in *Strickland v. Washington*, 466

U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984):

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* at ——, 104 S.Ct. at 2064, 80 L.Ed.2d at 693.

### A. *Prejudice*

■ The prejudice required by the second part of the *Strickland* test is something considerably more than the possibility that an unreasonable error by counsel might have had some effect on the trial. As the Court stated in *Strickland:* "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at ——, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. The director, on appeal, does not challenge the district court's finding of actual prejudice. Accordingly, we proceed to examine the director's primary argument: that Danish's failure to object to introduction of the details of Lyons' prior record constituted permissible trial strategy rather than deficient performance falling below that guaranteed Lyons by the Sixth Amendment.[5]

---

**4.** The district court stayed its judgment—directing the state of Texas to retry or release Lyons within 120 days of entry of judgment—pending resolution of this appeal.

**5.** Were we inclined to independently review the court's finding of prejudice, *see Armstead v. Maggio*, 720 F.2d 894, 896 (5th Cir.1983), we would be convinced that Danish's failure to object resulted in actual prejudice to Lyons' de-

### B. *Counsel's Effectiveness*

We now turn to the first part of the *Strickland* test: whether the trial counsel's professional conduct was deficient. *Strickland* teaches that:

> Judicial scrutiny of counsel's performance must be highly deferential.... Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Id.* at ——, 104 S.Ct. at 2065–66, 80 L. Ed.2d at 694–95. The director emphatically stresses the district court's failure to afford Danish's conduct sufficient deference and classifies Danish's failure to object in the jury's presence as a tactical decision presumptively made in the exercise of reasonable professional judgment. In scrutinizing the performance of counsel for Lyons in this case, we are mindful that "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Strickland, Id.* at ——, 104 S.Ct. at 2064, 80 L.Ed.2d at 694. That judicial scrutiny of counsel's performance, or lack thereof, must be highly deferential is unassailable. Nevertheless, we are not blind to the equally unassailable fact that "the purpose of

the effective assistance guarantee of the Sixth Amendment ... is simply to ensure that criminal defendants receive a fair trial." *Strickland*, 466 U.S. at ——, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. Our review of Danish's performance leads us to conclude that it does not fall within "the wide range of reasonable professional assistance," *id.*, nor might it be considered "sound trial strategy." *Id.* at ——, 104 S.Ct. at 2066, 80 L.Ed.2d at 695.

■ The director argues that Danish's decision—to elicit testimony that Lyons had previously been convicted—was a strategic decision "which *Strickland* classifies as 'virtually unchallengeable.'" Danish presumably felt it was necessary to tie the fact that Lyons' photograph in the photographic line-up bore the word "Texas" and a six-digit number to the fact that Lyons previously had been convicted, thus giving rise to the implication that Holloway identified Lyons' not because he was the robber but because his photograph suggested, more than the others, that he was the robber.[6] We agree, therefore, that Danish's voluntary introduction of the existence of Lyons' criminal record was a strategic, albeit inane, trial tactic.

■ Lyons, however, contends also that Danish failed to exclude or in any way limit cross-examination testimony indicating the criminal offense for which Lyons previously had been convicted. The director's an-

---

fense. The prosecutor's case relied entirely upon Holloway's in-court identification of Lyons. Notwithstanding Holloway's unequivocal testimony at the pre-trial hearing and at trial identifying Lyons as the robber, we note that the state offered no corroborating evidence against Lyons; that Holloway's identification of Lyons may have been influenced, to some degree, by the pre-trial photographic line-up; and, most importantly, that two witnesses' testimony placed Lyons away from the location of the robbery during the time of the robbery. Even though one witness was characterized as a "good friend" of Lyons and the other plead guilty to shoplifting, a misdemeanor involving moral turpitude, we conclude that the prosecutor's case was far from overwhelming and that the introduction into evidence of Lyons' prior aggravated robbery conviction undermined the reliability of his present conviction.

6. Danish's efforts here may have been misguided. An examination of the six photographs appearing in the line-up reveals that besides Lyons' photograph, two others have both numbers and the word "Texas" albeit abbreviated as "TX" and that as the district court observed, "all of the photographs were taken by law enforcement agencies, and ... the persons represented were arrestees at the time they were made...." Nevertheless, because "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time ...," *Strickland*, 466 U.S. at ——, 104 S.Ct. at 2065, 80 L.Ed.2d at 694, we do not believe Danish's introduction of evidence indicating Lyons had a criminal record constituted constitutionally deficient performance.

swer to this contention is again one founded on trial strategy. The director asserts that "[b]ecause counsel [Danish] already had objected to this line of questioning outside the presence of the jury, he obviously was aware that such an objection might be proper. Thus, [the director argues, Danish's] failure to object in the jury's presence can only be construed as a tactical decision, as the court below correctly recognized." This is an incorrect reading of the district court's order. The court did find that Danish's introduction of Lyons' past record in an attempt to discredit Holloway's identification was a "trial tactic [not] so ill-chosen as to have permeated the entire trial with obvious unfairness." However, the court also found that Danish unreasonably failed to object to the prosecutor's questions as to the nature of the prior conviction, failed to object to the prosecutor's allusion in closing argument to Lyons' propensity to commit aggravated robbery in light of his prior conviction for a similar crime and failed to seek a limiting instruction as to the prior conviction at any time. Our examination of the trial record leads us to agree with the district court and conclude that Danish's failure to object at the proper time to the introduction of Lyons' prior conviction, or to seek to limit the use of such evidence, constituted constitutionally deficient assistance of counsel.

Notwithstanding the state court's admonition to Danish to object when the state attempted, on cross-examination, to uncover the details of Lyons' past criminal record, Danish failed to do so. We can perceive no sound strategic reason for such a failure. There are two conceivable reasons for not objecting to admission of the details of the prior aggravated robbery conviction: first, to not draw undue attention to the prior conviction and, second, to preclude possible speculation by the jury as to the details of the prior conviction. In neither case might Danish's failure to object be considered sound trial strategy. *Strickland*, 466 U.S. at ——, 104 S.Ct. at 2066, 80 L.Ed.2d at 695.

■ The first reason for not objecting is not sound since under Texas law the details of Lyons' prior conviction would most surely have been excluded. *See Chambers v. State*, 601 S.W.2d 360, 362 (Tex.Crim.App. 1980); *see also* Tex.R.Evid. 404(b). Thus, the details of the prior conviction would not have been drawn to the jury's attention had a timely objection been made. To pass over the admission of prejudicial and arguably inadmissible evidence may be strategic; to pass over the admission of prejudicial and clearly inadmissible evidence, as here, has no strategic value. The second reason for not objecting also is not sound since the worst possible speculation by the jury would be that which was introduced into evidence as a result of the lack of any objection by Danish: that Lyons previously had been convicted of aggravated robbery, the same crime with which he was charged. As we stated in *Nero v. Blackburn*, 597 F.2d 991 (5th Cir.1979) (failure of defense counsel to request a mistrial),

> [w]e can hardly imagine anything more prejudicial to Nero than allowing the jury in his armed robbery case to hear the prosecutor's comments that Nero had been convicted twice before of burglary and once on drug charges. The jury may well have convicted Nero of the charged offense because it was aware of his prior convictions.

597 F.2d at 994. Similarly, here there could be no strategic basis for allowing the jury to hear that Lyons previously had been convicted of the same offense for which he stood trial.

Our conclusion that Danish's assistance to Lyons was deficient is bolstered by the fact that no limiting instruction was requested. After officer Echols testified to the details of Lyons' prior conviction, Danish, with no prejudice to Lyons, could have requested that the jury be instructed to consider the prior conviction only for the purpose of determining whether the photographic identification was credible and not suggestive. While this instruction does not entirely foreclose possible misuse of such evidence by the jury, it does direct the jury in what manner it should interpret this highly prejudicial and incriminating evi-

dence. Moreover, the lack of any limiting instruction enabled the prosecutor in his closing argument to the jury to refer to Lyons' prior aggravated robbery conviction: "You look at Defendant's Exhibit 9, and there's a question on there asking if he has ever been convicted of anything. 'Yes. Convicted of aggravated robbery; made parole.' He's done it once." This argument implicitly, if not explicitly, suggested to the jury that Lyons had repeated his earlier offense of armed robbery.

The director's argument that Danish's failure to object was sound trial strategy hinges upon Danish's otherwise credible defense of Lyons and upon Danish's knowledge that an objection to introduction of the details of Lyons' prior conviction was called for. We cannot agree. The presumption that Danish's inaction falls within the wide range of reasonable professional assistance does not outweigh or preclude in any way the fact that in this particular case, an attorney, exercising reasonable professional judgment, would not fail to object to the introduction of the details of a prior aggravated robbery conviction when the defendant is accused of the same offense, nor would such an attorney fail to request an instruction limiting the use of this evidence by the jury. *See Vela v. Estelle*, 708 F.2d 954 (5th Cir.1983), *cert. denied*, — U.S. —, 104 S.Ct. 736, 79 L.Ed.2d 195 (1984) (pre-*Strickland* decision in which we held that defense counsel who failed to specifically object, ask for a curative instruction, or preserve for appeal error as to prejudicial testimony, did not render reasonably effective assistance of counsel). The course of conduct undertaken by Danish may not be considered sound trial strategy. We conclude, therefore, that Danish's "omissions were outside the wide range of professionally competent assistance," *Strickland*, 466 U.S. at —, 104 S.Ct. at 2066, 80 L.Ed.2d at 695, and thus constituted ineffective assistance of counsel.

The judgment of the district court is AFFIRMED.