**Affirmed and Memorandum Opinion filed March 21, 2023.**



In The

# Fourteenth Court of Appeals

## NO. 14-22-00093-CR

**JORGE ALBERTO GARIVALDI, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 208th District Court
Harris County, Texas
Trial Court Cause No. 1677750**

## MEMORANDUM OPINION

Appellant Jorge Alberto Garivaldi appeals his conviction for burglary of a habitation. Tex. Penal Code § 30.02(a)(1). After a jury found appellant guilty, appellant entered into an agreement with the State for a recommended sentence of confinement for 25 years in the Institutional Division of the Texas Department of

Criminal Justice.[1] In two issues on appeal appellant challenges his conviction by asserting (1) he received ineffective assistance of counsel; and (2) the trial court erred in admitting hearsay testimony. We affirm.

## BACKGROUND

Gracie Hernandez, the complainant, called 911 reporting that she needed police to report to her home. After Gracie gave her name and address to the 911 operator, the operator said, "Gracie I do see your slip for service. Has anything changed since the last time you called?" The complainant responded, "I called because I didn't think he was going to come back. He came back. He beat me up real bad." The complainant agreed to speak with medical services. In response to the medical 911 operator's questions about the nature of the emergency, the complainant responded, "My boyfriend beat me up real bad. He's been beating me up for a long time." When asked for her phone number, the complainant responded, "Well he broke my phone so I'm calling from my neighbor's phone." When asked when the assault occurred, the complainant responded, "About three, four hours ago but he wouldn't let me get out of my apartment." The complainant told the operator that her boyfriend used a screwdriver to beat her. The complainant also explained that she was able to notify a police officer in the area that she had been assaulted but she did not know the location of the police officer at the time of the call.

Officer Hieu Le responded to the 911 call arriving at the complainant's apartment four minutes after the complainant called 911. When Officer Le arrived the complainant was crying, had bruises on her shoulder, and was holding on to her ribs. The complainant had difficulty walking and had to occasionally sit down to

---

[1] In exchange for appellant's agreement to a 25-year sentence, the State dismissed other charges pending against appellant. The trial court gave permission for appellant to appeal following his plea bargain on punishment.

catch her breath. Officer Le testified the complainant was "in a lot of pain." The complainant was "in fear" and appeared to be "under the stress of the event that just happened[.]"

Officer Le testified that the complainant told him she had been arguing with appellant over money when she asked appellant to leave the house.[2] Appellant left but returned forcing his way into the complainant's apartment by kicking in the front door. The complainant barricaded herself in her bedroom out of fear of appellant. The barricade did not hold, and appellant forced his way into the bedroom. After forcing himself into the bedroom appellant punched the complainant in her eyes. When the complainant fell down appellant kicked her on the left side of her body including her torso, ribs, and head.

Officer Le's investigation revealed that appellant was not listed on the lease to the apartment. The complainant reported that appellant entered the apartment without consent.

The jury found appellant guilty as charged in the indictment.

**ANALYSIS**

In two issues on appeal appellant asserts (1) he received ineffective assistance of counsel; and (2) the trial court erred in admitting hearsay testimony as an excited utterance.

## I.   Ineffective Assistance of Counsel

We examine claims of ineffective assistance of counsel under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, appellant must establish that his trial counsel's representation was deficient, and that the

---

[2] The trial court overruled appellant's hearsay objection to Le's testimony and permitted a running objection to the testimony about what the complainant told Le.

deficient performance was so serious that it deprived him of a fair trial. *Id*. at 687. Counsel's representation is deficient if it falls below an objective standard of reasonableness. *Id*. at 688. This deficiency will only deprive appellant of a fair trial when counsel's performance prejudices appellant's defense. *Id*. at 691–92. To demonstrate prejudice, appellant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. at 694. Failure to make the required showing of either deficient performance or sufficient prejudice defeats the claim of ineffectiveness. *Id*. at 697.

Our review of defense counsel's performance is highly deferential, beginning with the strong presumption that the attorney's actions were reasonably professional and were motivated by sound trial strategy. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). When the record is silent as to trial counsel's strategy, we will not conclude that appellant received ineffective assistance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). Rarely will the trial record contain sufficient information to permit a reviewing court to fairly evaluate the merits of such a serious allegation. *See Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). In the majority of cases, the appellant is unable to meet the first prong of the *Strickland* test because the record on direct appeal is underdeveloped and does not adequately reflect the alleged failings of trial counsel. *See Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007).

A sound trial strategy may be imperfectly executed, but the right to effective assistance of counsel does not entitle a defendant to errorless or perfect counsel. *See Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006). "[I]solated instances in the record reflecting errors of omission or commission do not render

4

counsel's performance ineffective, nor can ineffective assistance of counsel be established by isolating one portion of trial counsel's performance for examination." *McFarland v. State*, 845 S.W.2d 824, 843 (Tex. Crim. App. 1992), *overruled on other grounds by Bingham v. State*, 915 S.W.2d 9 (Tex. Crim. App. 1994). "It is not sufficient that the appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence." *Mata*, 226 S.W.3d at 430. Rather, to establish that the attorney's acts or omissions were outside the range of professionally competent assistance, appellant must show that counsel's errors were so serious that he was not functioning as counsel. *See Patrick v. State*, 906 S.W.2d 481, 495 (Tex. Crim. App. 1995).

In this case appellant did not file a motion for new trial alleging ineffective assistance of counsel or develop a record of counsel's reasons for his actions. Therefore, in addressing counsel's alleged ineffectiveness, the record is silent as to counsel's strategy.

In appellant's first issue alleging ineffective assistance of counsel, he asserts three sub-issues specifically complaining about trial counsel's assistance. In the first two sub-issues appellant challenges trial counsel's failure to object to the 911 tape and Officer Le's testimony on Confrontation Clause grounds.

## II. Trial counsel did not render ineffective assistance by failing to object to the 911 tape and to Officer Le's testimony on Confrontation Clause grounds.

At trial appellant objected on hearsay grounds to admission of the 911 tape and to Officer Le's statements about what the complainant told him. Appellant asserts on appeal that his counsel rendered ineffective assistance by failing to also object on the grounds that the evidence violated the Confrontation Clause found in the United States Constitution.

5

These failures to object to potentially inadmissible testimony are not sufficient, in themselves, to constitute deficient performance. *See Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999) (holding presumption of strategy not rebutted when record was "silent as to why appellant's trial counsel failed to object to the State's persistent attempts to elicit inadmissible hearsay"). Plausible professional reasons exist for not objecting to hearsay. There may have been strategic reasons for not objecting in these instances, but we may not speculate on counsel's motives in the face of a silent record. *See id.*; *see also Gamble v. State*, 916 S.W.2d 92, 93 (Tex. App.—Houston [1st Dist.] 1996, no pet.) (declining to speculate on various failures to object to admission of evidence).

If trial counsel's reasons for his conduct do not appear in the record and there is at least the possibility that the conduct could have been grounded in legitimate trial strategy, we will typically defer to counsel's decisions and deny relief on an ineffective assistance claim. *Garza v. State*, 213 S.W.3d 338, 348 (Tex. Crim. App. 2007). "'It is not sufficient that appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence.'" *Lopez v. State*, 343 S.W.3d 137, 142–43 (Tex. Crim. App. 2011) (quoting *Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007)). Absent a record sufficient to demonstrate that trial counsel's conduct was not the product of a strategic or tactical decision, we should presume that trial counsel's performance was constitutionally adequate "unless the challenged conduct was so outrageous that no competent attorney would have engaged in it." *State v. Morales*, 253 S.W.3d 686, 696–97 (Tex. Crim. App. 2008) (quoting *Goodspeed*, 187 S.W.3d at 390).

## A.    The 911 call

Appellant first asserts that his trial counsel rendered ineffective assistance by failing to object to the 911 tape on Confrontation Clause grounds. 911 calls initiated

to summon police assistance are generally nontestimonial because they are "a cry for help" or "the provision of information enabling officers immediately to end a threatening situation." *Davis v. Washington*, 547 U.S. 813, 832 (2006). Appellant contends trial counsel's failure to object to the 911 call in this case constituted "deficient conduct" because the call was the second 911 call the complainant made that day, the call admitted into evidence was made three to four hours after the offense, and the complainant did not sound like someone experiencing an ongoing emergency.

Failure to object to arguably inadmissible evidence does not constitute ineffective assistance of counsel. *Donald v. State*, 543 S.W.3d 466, 478 (Tex. App.—Houston [14th Dist.] 2018, no pet.). Generally, there is no strategic value "to pass over the admission of prejudicial and clearly inadmissible evidence." *Ex parte Menchaca*, 854 S.W.2d 128, 132 (Tex. Crim. App. 1993) (quoting *Lyons v. McCotter*, 770 F.2d 529, 534 (5th Cir. 1985)). But, to "pass over the admission of prejudicial and arguably inadmissible evidence may be strategic." *Id.* (quoting *Lyons*, 770 F.2d at 534). In this case, appellant has not established that the 911 call was "clearly inadmissible."

On this record, to hold appellant's counsel rendered ineffective assistance, we would have to engage in prohibited speculation. *See Stafford v. State*, 101 S.W.3d 611, 613–14 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd). It may be strategic to not object to inadmissible hearsay, for example, if trial counsel "at that moment may have reasonably decided that the testimony was not inadmissible." *Thompson*, 9 S.W.3d at 814 (no deficient performance on a silent record as to why trial counsel failed to object to the State's "artful questions" as the State "doggedly pursued the introduction of inadmissible hearsay"); *see also Lopez*, 343 S.W.3d at 141, 143–44 (no deficient performance on a silent record as to why counsel failed to object to

7

inadmissible hearsay; possible strategy included exposing inconsistencies in outcry statements). Counsel could have declined to object to avoid emphasizing that appellant broke the complainant's phone and prevented her from leaving her home. Absent evidence of counsel's strategy, we cannot denounce counsel's failure to object as ineffective. *See Thompson*, 9 S.W.3d at 814. We overrule this first part of appellant's ineffective-assistance issue and need not address the prejudice prong. *See Strickland*, 466 U.S. at 687.

**B.    The complainant's statements to Officer Le**

In the second part of appellant's ineffective-assistance issue he asserts his trial counsel rendered ineffective assistance by failing to assert a Confrontation-Clause objection to statements the complainant made to Officer Le.

The Confrontation Clause of the Sixth Amendment guarantees accused persons the right to confront the witnesses against them. *See* U.S. Const. amend. VI; *Pointer v. Texas*, 380 U.S. 400, 403 (1965). The United States Supreme Court has applied this rule to "testimonial" statements and held that such statements are inadmissible at trial unless the witness who made them either takes the stand to be cross-examined or is unavailable and the defendant had a prior opportunity to cross-examine the witness. *Crawford v. Washington*, 541 U.S. 36, 54 (2004). Responses to preliminary questions by police at the scene of a crime while police are assessing and securing the scene are generally not testimonial. *See, e.g.*, *Villanueva v. State*, 576 S.W.3d 400, 405 (Tex. App.—Houston [1st Dist.] 2019, pet. ref'd); *see also Santacruz v. State*, 237 S.W.3d 822, 828 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd) ("'initial inquiries' by law enforcement officers arriving at crime scenes involving domestic disputes 'may often' produce nontestimonial statements because 'officers called to investigate . . . need to know whom they are dealing with in order to assess the situation, the threat to their own safety, and possible danger to the

8

potential victim.'") (quoting *Davis*, 547 U.S. at 831–32).

The Court of Criminal Appeals has summarized three kinds of testimonial statements: (1) "ex parte in-court testimony or its functional equivalent," i.e., "pretrial statements that declarants would reasonably expect to be used prosecutorially;" (2) "extrajudicial statements contained in formalized testimonial materials," such as affidavits, depositions, or prior testimony; and (3) "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Langham v. State*, 305 S.W.3d 568, 576 (Tex. Crim. App. 2010).

The following principles are useful in determining whether particular statements are testimonial: (1) testimonial statements are official and formal in nature, (2) interaction with the police initiated by a witness or the victim is less likely to result in testimonial statements than if initiated by the police, (3) spontaneous statements to the police are not testimonial, and (4) responses to preliminary questions by police at the scene of the crime while police are assessing and securing the scene are not testimonial. *Amador v. State*, 376 S.W.3d 339, 342–43 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd); *Dixon v. State*, 244 S.W.3d at 482.

Not all statements made to a police officer are testimonial. *Spencer v. State*, 162 S.W.3d 877, 883 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd). In *Spencer*, we determined that a complainant's initial statements to police were not testimonial because they were made when the police arrived on the crime scene to assess and secure the scene, and they bore "no indicia of the formal, structured questions necessary for statements to be testimonial." *Id.*; *see also Wilson v. State*, 296 S.W.3d at 147 (information solicited from the declarant was necessary to enable police to arrest the suspect and resolve the present emergency).

In *Vinson v. State*, the Court of Criminal Appeals suggested a non-exhaustive

9

list of factors to consider when determining whether statements a domestic-violence victim made in person to a responding officer at the scene of a crime were made during the existence of an ongoing emergency. *Vinson v. State*, 252 S.W.3d 336, 337–39 (Tex. Crim. App. 2008). Those factors include: (1) whether the situation was still in progress; (2) whether the questions sought to determine what is presently happening as opposed to what has happened in the past; (3) whether the primary purpose of the interrogation was to render aid rather than to memorialize a possible crime; (4) whether the questioning was conducted in a separate room, away from the alleged attacker; and (5) whether the events were deliberately recounted in a step-by-step fashion. *Vinson*, 252 S.W.3d at 339 (citing *Davis*, 547 U.S. at 829–30).

As to the first *Vinson* factor—whether the situation was still in progress—Officer Le arrived at the scene within four minutes of the complainant placing the 911 call. When he arrived he found the complainant crying, with bruises on her shoulder, and injured ribs. The complainant had difficulty walking and had to occasionally sit down to catch her breath. Officer Le testified the complainant was "in a lot of pain," was "in fear," and appeared to be "under the stress of the event that just happened[.]" At that time Officer Le did not know appellant's whereabouts or whether appellant would return to the scene. Although appellant was not still at the apartment, the circumstances established the immediacy of the events and the complainant's ongoing need for assistance. We find this factor weighs in favor of holding the complainant's statements nontestimonial. *See Vinson*, 252 S.W.3d at 339.

As to the second *Vinson* factor—whether the questions sought to determine what was then presently happening—Officer Le did not testify whether the complainant's statements were volunteered or whether they were in response to his questioning. Because we cannot determine whether the complainant volunteered

10

information or whether Officer Le asked preliminary questions, we find this factor to be neutral.

As to the third *Vinson* factor—whether the primary purpose of the interrogation was to render aid rather than to memorialize a possible crime—there is no indication that the interaction between Officer Le and the complainant was anything other than a preliminary investigation intended to render aid. Although Officer Le later filed a report, there was no indication in the record that Officer Le took notes at the time, recorded the complainant's statements, or in any other way attempted to memorialize a possible crime. We find this factor weighs in favor of holding the complainant's statements nontestimonial. *See Vinson*, 252 S.W.3d at 339.

As to the fourth *Vinson* factor—the questioning was conducted in a location away from the assailant—it is true that appellant was not on the premises when Officer Le spoke with the complainant. However, there was also no evidence that appellant had been apprehended at that time. Neither Officer Le nor the complainant knew if appellant might return. We find this factor weighs in favor of holding the complainant's statements nontestimonial. *See Vinson*, 252 S.W.3d at 339.

As to the last *Vinson* factor, the events were not deliberately recounted in a step-by-step fashion in that the complainant was injured, crying, and had difficulty walking and standing due to her injuries. The brief conversation between Officer Le and the complainant was not in the nature of a witness statement given after time for reflection and in a more formal setting. We find this last factor weighs in favor of holding the complainant's statements nontestimonial. *See Vinson*, 252 S.W.3d at 339.

In asserting that his trial counsel rendered ineffective assistance by failing to lodge a Confrontation-Clause objection to Officer Le's testimony, appellant argues

11

that the "facts in this case are nearly identical to those in *Lopez* [*v. State*, No. 01-16-00290-CR, 2017 WL 1173893 (Tex. App.—Houston [1st Dist.] Mar. 30, 2017, no pet.) (not designated for publication)]." We initially note that we are not bound by the holding in an unpublished criminal case. *See* Tex. R. App. P. 47.7(a) ("Opinions and memorandum opinions not designated for publication by the court of appeals under these or prior rules have no precedential value"). We also find the facts of today's case distinguishable from the facts in *Lopez*.

In *Lopez*, our sister court held that certain statements made by a complainant in a domestic violence case were testimonial in nature and should have been excluded following the appellant's Confrontation-Clause objection. *Lopez*, 2017 WL 1173893 at *6. In *Lopez*, following the assault, the complainant and appellant returned to the home to be interviewed separately by two different police officers. *Id*. When the complainant was questioned, she reported the assault and the officer asked her to stand to take photos of her injuries. *Id.* The officer in that case testified that the complainant "was aware that the officers were conducting a criminal investigation, and that [the complainant] understood that her answers to Officer White's questions would be used as evidence against appellant." *Id.* The court therefore held that the complainant's statements concerning the details of the offense were testimonial. *Id.*

Here, the complainant's statements to Officer Le were not testimonial in nature. When Officer Le arrived, he did not know appellant's whereabouts or whether appellant would return to the scene. There is no evidence to show that the complainant was aware that her statements would be used as evidence against appellant. Moreover, the events as described by the complainant were not recounted in a step-by-step fashion in a formal setting, but were recounted while the complainant was under the stress of the event and in fear of appellant. *See Vinson*,

252 S.W.3d at 339 (citing deliberate recounting of events as a factor to determine testimonial nature of statement).

Based on all of the circumstances at the time the complainant made her statements to Officer Le we hold that the complainant's statements were not testimonial in nature. *See id.* Because the statements were nontestimonial the Confrontation Clause was not implicated, and trial counsel did not render ineffective assistance by failing to lodge a non-meritorious Confrontation-Clause objection. *See DeLeon*, 322 S.W.3d at 381. We overrule this second part of appellant's ineffective-assistance issue and need not address the prejudice prong. *See Strickland*, 466 U.S. at 687.

### C.    Failure to investigate

In appellant's third assertion under his ineffective-assistance issue, appellant asserts trial counsel failed to conduct an adequate investigation that would have allowed him to contest the implication of the State's suggestion that Officer Le arrived on scene four minutes after the assault. Despite appellant's contention, the record before us does not indicate the extent of trial counsel's investigation.

Appellant asserts that trial counsel failed to object to the testimony that Officer Le arrived on scene four minutes after the complainant's 911 call. Appellant urges that this testimony allowed the jury to infer that Officer Le arrived four minutes after the assault. Appellant contends that the "only possible explanation" for counsel's actions were that he failed to investigate the facts of the case and "never listened to the 911 recording." To the contrary, there is no evidence in the record that trial counsel failed to listen to the 911 recording or lacked an understanding of the timing of Officer Le's arrival vis-à-vis the timing of the offense.

For a conclusion that trial counsel failed to properly investigate a matter, the

13

record must affirmatively show how trial counsel's investigation was lacking. *See Stults v. State*, 23 S.W.3d 198, 208–09 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). The record before this court makes no such showing; appellant's complaint on appeal engages in speculation about trial counsel's actions. From this record, we are unable to determine that trial counsel failed to properly investigate the complained-of matters without engaging in speculation, which—as we have already noted—we will not do. We overrule this third sub-part of appellant's first issue alleging trial counsel failed to properly investigate.

Having overruled each of appellant's sub-issues, we overrule appellant's first issue alleging ineffective assistance of counsel.

## III. The trial court did not abuse its discretion in admitting the complainant's out-of-court statements under the excited-utterance exception to the hearsay rule.

In appellant's second issue he asserts the trial court erred in admitting the complainant's statements over a hearsay objection. The State argues in response that the testimony was admissible under the excited utterance exception to the hearsay rule.

We review a trial court's decision to admit evidence for an abuse of discretion. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003). A trial court abuses its discretion only if the trial judge's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree. *Balderas v. State*, 517 S.W.3d 756, 778 (Tex. Crim. App. 2016).

Hearsay is a statement made outside of court and offered into evidence to prove the truth of the matter asserted. Tex. R. Evid. 801(d). Although hearsay is generally inadmissible, Texas Rule of Evidence 803 provides an exception for admitting excited utterances: statements "relating to a startling event or condition,

14

made while the declarant was under the stress of excitement that it caused." Tex. R. Evid. 803(2); *see Zuliani*, 97 S.W.3d at 595–96. There are three requirements for a statement to be an excited utterance:

> (1) the statement must be the product of an occurrence startling enough to produce a state of nervous excitement in the declarant, which would render the utterance spontaneous and unreflecting;
>
> (2) the statement is made before there is time to contrive and misrepresent, that is, the state of excitement produced by the startling event must still dominate the reflective powers of the mind; and
>
> (3) the statement must relate to the circumstances of the occurrence preceding it.

*McCarty v. State*, 257 S.W.3d 238, 241 (Tex. Crim. App. 2008).

Generally, a trial court may rely on the contents of the statement itself, along with the declarant's appearance, behavior, and condition, to determine the occurrence of an exciting event and the declarant's personal perception of it. *Ross v. State*, 154 S.W.3d 804, 809 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd). The court may also consider the time elapsed and whether the statement was in response to a question. *Salazar v. State*, 38 S.W.3d 141, 154 (Tex. Crim. App. 2001). It is not dispositive that the statement is an answer to a question or that it was separated by a period of time from the startling event; these are simply factors to consider in determining whether the statement is admissible under the excited utterance hearsay exception. *Id.* The critical determination is whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event or condition at the time of the statement. *Zuliani*, 97 S.W.3d at 596.

Appellant argues on appeal that the complainant's statements did not qualify as excited utterances because (1) the complainant made two calls to 911; (2) Officer Le did not arrive until three to four hours after the assault; (3) appellant was no longer at the complainant's apartment; (4) another officer had pursued appellant; and

15

(5) the complainant was with a neighbor at the time Officer Le arrived. Initially we note that not all of appellant's assertions are supported by the record.

The record reflects that the 911 operator referenced a previous call slip, but does not show when that call was made or the subject matter of the call. The complainant explained to the 911 operator that appellant assaulted her three to four hours before she made the call, but also explained that appellant had broken her phone and would not let her leave. The record reflects that the complainant made the 911 call as soon as she was able. Officer Le arrived on scene within four minutes of the 911 call. The 911 recording reflects that the complainant earlier "made contact" with another officer, but the record does not reflect why that officer was on the scene—whether he had responded to a 911 dispatch or was flagged down while on patrol. Finally, the only evidence in the record about a neighbor is that the complainant borrowed a neighbor's phone because appellant had broken her phone. There is no evidence that the complainant was with the neighbor when she was using the phone or when she was speaking with Officer Le.

While the assault could have taken place long before the 911 call was placed, Officer Le's testimony about the physical state of the complainant in addition to her emotional state, establishes the statements were not self-serving and were made shortly after the event. *See Apolinar v. State*, 155 S.W.3d 184, 190–91 (Tex. Crim. App. 2005) (testimony that declarant still appeared nervous or distraught and that there was reasonable basis for continuing emotional upset will often suffice).

The record reflects the complainant's statements were the product of a startling occurrence that produced a state of nervousness in the complainant, which still dominated her mind when Officer Le responded to the 911 call. The complainant's statements related to the assault, which had taken place recently, and the complainant was still dominated by the emotions, excitement, fear, and pain of

16

the event. We hold the trial court did not abuse its discretion when it admitted Officer Le's testimony about the complainant's out-of-court statements as excited utterances. We overrule appellant's second issue.

## CONCLUSION

Having overruled appellant's issues on appeal we affirm the trial court's judgment.

/s/    Jerry Zimmerer
Justice

Panel consists of Justices Zimmerer, Spain, and Hassan (J. Hassan concurring without opinion).
Do Not Publish — Tex. R. App. P. 47.2(b).