**Affirmed and Memorandum Opinion filed November 14, 2023.**



**In The**

# Fourteenth Court of Appeals

### NO. 14-23-00358-CV

## IN THE INTEREST OF S.N.R-T., A/K/A S.R-T., S.J.R-T., A/K/A S.T., D.G.R-T., A/K/A D.T., A.G.R-T., A/K/A A.T., E.U.T.M., A/K/A E.T., CHILDREN

**On Appeal from the 313th District Court
Harris County, Texas
Trial Court Cause No. 2022-00674J**

## MEMORANDUM OPINION

Appellant K.C.T.M. ("Mother") appeals an order terminating her parental rights to her son E.T. and appointing appellee the Department of Family and Protective Services ("the Department") as the sole managing conservatorship of her other children, S.T., R.T., D.T., and A.T. In five issues we have reorganized as four, Mother argues: (1) the trial court erred when it overruled Mother's evidentiary objections; (2) the evidence is legally and factually insufficient to support the termination of her parental rights under Texas Family Code § 161.001(b)(1) subsections (D) and (O); (3) the evidence is legally and factually

insufficient to support a finding that termination of Mother's parental rights was in E.T.'s best interest; (4) she received ineffective assistance of counsel; and (5) the trial court erred when it denied a request for an extension and continuance. We affirm.

## I. BACKGROUND

On April 20, 2022, law enforcement responded to Mother's apartment based on reports that her five children were alone at her apartment in the middle of the day.[1] That same day, the Department received a referral alleging Mother's neglectful supervision of the children and took all five children into its care.

On April 22, 2022, the Department filed its original petition for protection of the children and for termination of the parent-child relationship. In its live pleading, the Department sought the termination of Mother's parental rights to all the children pursuant to § 161.001(b)(1) subsections (D), (E), (K), (L), (N), and (O). *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E), (K), (L), (N), (O).

On April 11, 2023, the Department's claims were tried to the bench. The Department and the ad litem requested that the trial court retain the suit on the court's docket and set a new dismissal date to give Mother more time to complete all the tasks required in her family service plan, but the trial court refused the request. *See id.* § 263.401. The Department and the ad litem requested that the trial court terminate Mother's parental rights to E.T. to allow E.T. to be adopted by his foster mother ("Foster Mother") and requested the appointment of the Department as the permanent managing conservator of the other four children.

The trial court received testimony from Mohamed Boima ("Boima"), the

---

[1] At the time the children were removed from Mother's care, S.T. was eight years old, R.T. was five years old, D.T. was three years old, A.T. was one year old, and E.T. was three months old.

Department's case worker for Mother's case since January 19, 2023; Erika Arguelles ("Arguelles"), the guardian ad litem for the children; Foster Mother; and Mother. The trial court also admitted exhibits, including the Department's affidavit in support of removal of the children, the Department's family plan for Mother, two status hearing orders, a report to the trial court from Arguelles, and a permanency report submitted to the court.

On May 9, 2023, the trial court entered an order terminating Mother's rights to E.T. pursuant to § 161.001(b)(1) subsections (D) and (O) and appointing the Department as the sole managing conservator of E.T. because the court found that the appointment of Mother would significantly impair the children's physical health or emotional development.[2] *See id.* § 263.404. On June 12, the Department filed a motion for judgment nunc pro tunc, arguing that S.T., R.T., D.T., and A.T. were inadvertently not named in the final decree and that the decree should be amended to name the Department as the managing conservator for these four children.[3] On July 19, 2023, the trial court signed a decree "nunc pro tunc," adding that the other four children were placed in the sole managing conservatorship of the Department because the trial court found that the appointment of Mother would significantly impair the children's physical health or emotional development and

---

[2] The trial court also terminated the parental rights of the children's fathers. They are not parties to this appeal.

[3] After a trial court loses its plenary power over a judgment, it can correct only clerical errors in the judgment by a judgment nunc pro tunc. *Escobar v. Escobar*, 711 S.W.2d 230, 231 (Tex. 1986); *see* Tex. R. Civ. P. 316, 329(f). A clerical error is a discrepancy between the entry of a judgment in the record and the judgment that was actually rendered. *See Andres v. Koch*, 702 S.W.2d 584, 585 (Tex. 1986). If the trial court signs a corrected judgment while it has plenary power, then the trial court signed a modified judgment, not a judgment nunc pro tun. *See Alford v. Whaley*, 794 S.W.2d 920, 922 (Tex. App.—Houston [1st Dist.] 1990, no writ). Here, Mother filed a motion for new trial on June 8, 2022, which extended the trial court's plenary power to the date of the filing of the Department's motion for judgment nunc pro tunc. *See* Tex. R. Civ. P. 329b. Mother does not raise any issue concerning the trial court's entry of the modified judgment and its order granting the Department's motion for judgment nunc pro tunc.

removing E.T.'s reference in that section of the order. Mother filed a motion for new trial, arguing that she received ineffective assistance of counsel during trial. Mother also filed an unopposed motion to supplement her motion for new trial. The trial court did not rule on either motion. This appeal followed.

## II. EVIDENTIARY OBJECTIONS

In her first issue, Mother argues that the trial court erred when it overruled her hearsay objections to the Department's removal affidavit and Arguelles's report to the court which detail the events of the day the children were removed and the subsequent investigation. As such, Mother argues, there is no evidence because these documents "were the Department's only evidence of the facts asserted therein . . . ."

Here, Mother failed to identify the statements in the eight-page removal affidavit and Arguelles's four-page report to the court that she challenged as hearsay, and thus, she failed to preserve this complaint for review. *See In re M.T.R.*, 579 S.W.3d 548, 569 (Tex. App.—Houston [14th Dist.] 2019, pet. denied) ("A hearsay objection that does not identify which parts of a document contain hearsay is not sufficiently specific to preserve error with respect to those parts."). Furthermore, Mother failed to object to Boima's testimony and other exhibits containing the same facts. Finally, Mother also introduced evidence of most of the same facts through her own testimony. Thus, we overrule Mother's first issue. *See id.* at 570 ("When evidence identical or similar to the objected-to evidence is admitted elsewhere without objection, there is no harm.").

## III. SUFFICIENCY OF THE EVIDENCE

In her second issue, Mother argues that the evidence is legally and factually insufficient to support the termination of her parental rights under Texas Family

Code § 161.001(b)(1) subsections (D) and (O). *See* Tex. Fam. Code Ann. § 161.00(b)(1)(D), (O). Mother also argues that she raised a defense to termination under subsection (O). *See id.* § 161.001(d).

## A.    APPLICABLE LAW

Involuntary termination of parental rights involves fundamental constitutional rights and divests the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit from the parent. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *see Stantosky v. Kramer*, 455 U.S. 745, 753 (1982). "Termination of parental rights, the total and irrevocable dissolution of the parent-child relationship, constitutes the 'death penalty' of civil cases." *In re K.M.L.*, 443 S.W.3d 101, 121 (Tex. 2014) (Lehrmann, J., concurring). Accordingly, termination proceedings must be strictly scrutinized. *Id.* at 112. In such cases, due process requires application of the "clear and convincing" standard of proof. *Id.* (citing *Stantosky*, 455 U.S. at 769; *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002)).

This intermediate standard of proof falls between the preponderance of the evidence standard of civil proceedings and the reasonable doubt standard of criminal proceedings. *In re G.M.*, 596 S.W.2d 846, 847 (Tex. 1980). "'Clear and convincing evidence' means a 'measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.'" *In re N.G.*, 577 S.W.3d 230, 235 (Tex. 2019) (per curiam) (quoting Tex. Fam. Code Ann. § 101.007); *see In re K.M.L.*, 443 S.W.3d at 112–13 ("In cases requiring clear and convincing evidence, even evidence that does more than raise surmise and suspicion will not suffice unless that evidence is capable of producing a firm belief or conviction that the allegation is true.").

The trial court may order the termination of the parent-child relationship if

5

the court finds by clear and convincing evidence that: (1) the parent committed an act or omission described in Family Code § 161.001(b)(1) and (2) termination is in the best interest of the child. Tex. Fam. Code Ann. § 161.001(b); *In re N.G.*, 577 S.W.3d at 232. "To affirm a termination judgment on appeal, a court need uphold only one termination ground—in addition to upholding a challenged best interest finding—even if the trial court based the termination on more than one ground." *In re N.G.*, 577 S.W.3d at 232; *see* Tex. Fam. Code Ann. § 161.001(b). However, we must always review any sufficiency challenge to a termination on appeal under subsection (D) and (E). *See In re N.G.*, 577 S.W.3d at 235 ("When a parent has presented the issue on appeal, an appellate court that denies review of a section 161.001(b)(1)(D) or (E) finding deprives the parent of a meaningful appeal and eliminates the parent's only chance for review of a finding that will be binding as to parental rights to other children.").

## B. STANDARD OF REVIEW

When both legal and factual sufficiency challenges are raised, we must first review the legal-sufficiency challenge. *See Glover v. Tex. Gen. Indem. Co.*, 619 S.W.2d 400, 401 (Tex. 1981) (per curiam); *In re L.M.*, 104 S.W.3d 642, 647 (Tex. App.—Houston [1st Dist.] 2003, no pet.).

In a legal sufficiency review, a court views the evidence in a light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.F.C.*, 96 S.W.3d at 266. To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, this means that a reviewing court must assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *Id.* A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or

6

found to have been incredible. *Id.* This does not mean that a court must disregard all evidence that does not support the finding. *Id.* Disregarding undisputed facts that do not support the finding could skew the analysis of whether there is clear and convincing evidence. *Id.* If, after conducting its legal sufficiency review of the record evidence, a court determines that no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then that court must conclude that the evidence is legally insufficient. *In re J.F.C.*, 96 S.W.3d at 266–67.

In a factual-sufficiency review, the appellate court must consider whether disputed evidence is such that a reasonable fact finder could not have resolved it in favor of the finding. *In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018). Evidence is factually insufficient if, in light of the entire record, the disputed evidence a reasonable factfinder could not have credited in favor of a finding is so significant that the factfinder could not have formed a firm belief or conviction that the finding was true. *Id.*

## C. TEXAS FAMILY CODE § 161.001(b)(1)(D)

Subsection (D) allows for termination of parental rights if clear and convincing evidence supports a conclusion that the parent "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child." Tex. Fam. Code Ann. § 161.001(b)(1)(D). A child is endangered when the environment creates a potential for danger and the parent is aware of the danger but consciously disregards it. *In re J.E.M.M.*, 532 S.W.3d 874, 881 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

The relevant time frame to determine whether there is clear and convincing evidence of endangerment is before the child was removed. *In re J.W.*, 645 S.W.3d

7

726, 749 (Tex. 2022); *In re J.R.*, 171 S.W.3d 558, 569 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Termination under subsection (D) may be based on a single act or omission. *See In re J.E.M.M.*, 532 S.W.3d at 884. The acceptability of living conditions and parental conduct in the home are subsumed in the endangerment analysis. *See In re V.A.*, 598 S.W.3d 317, 328 (Tex. App.—Houston [14th Dist.] 2020, pet. denied); *In re J.E.M.M.*, 532 S.W.3d at 880–81; *In re J.D.*, 436 S.W.3d 105, 114 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

A parent's neglect of her child's medical or dental needs endangers the child, *In re J.H.*, No. 01-22-00629-CV, 2023 WL 2169952, at *14 (Tex. App.— Houston [1st Dist.] Feb. 23, 2023, pet. denied) (mem. op.); *see, e.g.*, *In re E.A.D.*, No. 14-22-00025-CV, 2022 WL 2663981, at *5 (Tex. App.—Houston [14th Dist.] July 11, 2022, no pet.) (mem. op.), as well as a parent's failure to properly supervise her young child. *See In re M.C.*, 917 S.W.2d 268, 269–70 (Tex. 1996) (per curiam); *see also In re J.H.*, No. 01-22-00629-CV, 2023 WL 2169952, at *13 (Tex. App.—Houston [1st Dist.] Feb. 23, 2023, pet. denied) (mem. op.).

## 1. Analysis

### a. Legal Sufficiency

The removal affidavit states:

Office Villareal stated that when she arrived at the scene, one of the youngest children [A.T.] was observed outside with no shoes on, alone. Officer Villareal observed the 3-year-old child [R.T.] and 4-year-old [D.T.] standing in the doorway of the apartment. Officer Villareal observed the oldest child [S.T.] inside the home on the phone and the baby was observed swaddled inside the crib. Officer Villareal described seeing [E.T.] with a colostomy bag, the contents of the bag quite full [sic]. Officer Villareal described the children as dirt [sic], with no shoes on and no adult caregiver present in the home. According to Officer Villareal, the apartment leasing office reported seeing the children home alone since as early as 11:00 am that day.

Officer Villareal had [S.T.] call the mother on his cell phone, who didn't answer after several attempts. Finally, [S.T.] was able to get [Mother] on the phone, Office Villareal spoke with the mother and informed her that Law Enforcement was at the home and she needed to come home. According to Officer Villareal, [Mother] arrived to the home about 8 minutes later and appeared to be very calm. Officer Villareal stated that [Mother] said she went to get formula for the baby and had only been gone for 10 minutes. Officer Villareal stated that the story provided by [Mother] did not add up, and she was arrested and charged with abandonment with intent to return and endangerments.

The officers arrived at the apartment at 3:30 p.m., and the children were removed from Mother's care by the Department and ultimately placed in foster care.

The Department's family plan notes that E.T. was a three-month-old infant with severe medical conditions. Viewing the evidence that Mother left her very young children unattended for four and a half hours, including a three-month-old infant with a "quite full" colostomy bag in a crib swaddled in blankets, and that mother did not immediately respond to telephone calls from S.T., in the light most favorable to the trial court's finding, we conclude there is legally sufficient evidence that Mother knowingly placed or allowed E.T. to remain in conditions or surroundings that endangered his physical or emotional well-being. *See In re J.F.C.*, 96 S.W.3d at 266; *In re M.C.*, 917 S.W.2d at 269–70; *In re J.H.*, 2023 WL 2169952, at *13–14; *In re E.A.D.*, 2022 WL 2663981, at *5.

### b. Factual Sufficiency

Factual sufficiency review "requires weighing disputed evidence contrary to the finding against all the evidence favoring the finding." *In re A.C.*, 560 S.W.3d at 631. While there is some evidence that Mother's home was adequate and that she remained in close proximity to the children and returned when called, *see In re J.E.M.M.*, 532 S.W.3d at 881, there was also evidence that E.T. was a medically

fragile three-month-old infant with respiratory concerns, left unattended in a crib for hours with a colostomy bag that was "quite full" when he required continuous watch for gastrointestinal ("GI") concerns. Weighing all the evidence in the record, we conclude that a reasonable fact finder could have formed a firm belief or conviction that Mother knowingly placed or allowed E.T. to remain in conditions or surroundings which endangered his physical or emotional well-being. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D); *In re J.E.M.M.*, 532 S.W.3d at 881. Therefore, we conclude the evidence is factually sufficient to support termination under subsection (D).

We overrule Mother's first issue.[4]

## IV.   BEST INTEREST OF THE CHILD

Mother argues next that there is legally and factually insufficient evidence to support the trial court's finding that termination of her parental rights to E.T. was in E.T.'s best interest. *See* Tex. Fam. Code Ann. § 161.003(a)(5).

### A.   APPLICABLE LAW

Although prompt and permanent placement in a safe environment is presumed to be in a child's best interest, Tex. Fam. Code Ann. § 263.307(a), courts apply a strong presumption that the child's best interest is served by keeping the child with his natural parents; the burden is on the Department to rebut that presumption. *In re L.C.L.*, 599 S.W.3d 79, 86–87 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (en banc); *In re D.R.A.*, 374 S.W.3d 528, 531 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

---

[4] Because only one ground is needed for termination, we need not address Mother's arguments challenging the sufficiency of the evidence for the trial court's finding under subsection (O). *See* Tex. R. App. P. 47.4; *In re N.G.*, 577 S.W.3d 230, 232 (Tex. 2019) (per curiam).

In determining the best interest of the children, the factfinder may consider the *Holley* factors: (1) the desires of the child; (2) the present and future physical and emotional needs of the child; (3) the present and future emotional and physical danger to the child; (4) the parental abilities of the persons seeking custody; (5) the programs available to assist those persons seeking custody in promoting the best interest of the child; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) acts or omissions of the parent that may indicate the existing parent-child relationship is not appropriate; and (9) any excuse for the parents' acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These factors are non-exclusive and the best interest finding does not require proof of any unique set of factors. *See In re J.J.C.*, 302 S.W.3d 436, 447 (Tex. App.—Houston [14th Dist.] 2009, pet. denied).

"The fact that a child has special needs does not automatically mean that termination of the parent-child relationship is in the best interest of the child." *In re M.M.A.*, No. 01-20-00709-CV, 2021 WL 1134308, at *36 (Tex. App.—Houston [1st Dist.] Mar. 25, 2021, no pet.) (mem. op.) (citing *In re L.C.L.*, 599 S.W.3d at 88). Instead, the factfinder must view the existence of any special needs—like all relevant facts and circumstances—through the *Holley* lens. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). For example, the factfinder must weigh the parties' relative abilities to meet the child's needs and any programs available to help them do so. *In re M.A.A.*, 2021 WL 1134308, at *36. Thus, a child's special needs weighs in favor of termination to the extent the evidence suggests that termination of parental rights would improve the outlook for the child's health. *Id.*; *see also In re J.E.M.M*, 532 S.W.3d at 887 (reversing termination after observing that Department had not presented any evidence that termination of parental rights to child with autism

would serve best interest of child).

Stability and permanence are paramount in the upbringing of children. *In re J.D.*, 436 S.W.3d 105, 120 (Tex. App.—Houston [14th Dist.] 2014, no pet.). The factfinder may compare the parent's and the Department's plans for the child and determine whether the plans and expectations of each party are realistic or weak and ill-defined. *Id.* at 119–20.

## B.    ANALYSIS

Here, there is no evidence of E.T.'s desires because he is too young to express them. *See Jordan v. Dossey*, 325 S.W.3d 700, 730 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). Foster Mother testified that E.T. has over twenty medical diagnoses, is a medically fragile child who could deteriorate rapidly and unexpectedly, is developmentally delayed, and requires continued and regular appointments with multiple doctors. E.T. has a hernia, ileostomy reversal, softening of the head, colitis, breathing issues, mobility issues, hearing issues, and feeding issues. He requires a special kind of diet because of issues with his mouth and larynx and sees multiple specialists, including a pediatric surgeon, gastroenterologist, and a nutritionist. Many of E.T.'s diagnoses are lifelong conditions.

Boima testified that Foster Mother is "very involved" in E.T.'s care, that E.T. is bonded with the foster family, and that all of his needs were being met with Foster Mother. Boima testified that after her discussions with Mother, Mother had not "fully expressed" to Boima that she wanted E.T. home with her, like she had for the other four children. Boima and Arguelles testified that they did not believe Mother had a full understanding of E.T.'s medical conditions. Mother testified that she hoped some of E.T.'s medical conditions would get resolved in the future "[w]ith God's help . . . ."

Foster Mother explained that E.T. has more than twenty "forever" diagnoses that require continuous care and medical supervision. She testified that E.T. was born with syphilis, has hypotonia and respiratory failure, and has gone into acute respiratory failure. His hypotonia, which she described as low muscle tone, affects how his body processes or responds to being sick or ill. Because a section of E.T.'s colon was removed after an ileostomy, he is continuously on a watch as to how he processes food, which requires a daily diary of his intake and outtake, as well as regular GI doctor appointments. E.T. was also being evaluated for cerebral palsy. E.T.'s most recent diagnosis was significant hearing loss in his left ear, which may require cochlear implants. He is unable to walk, crawl, or roll over, and is approximately six to seven months delayed in his development.

Foster Mother was caring for E.T. by "working on sit-to-stand motions, independent sitting[,] and different other activities to strengthen his muscles and kind of give him the ability of mobility." She takes E.T. to physical therapy, occupational therapy, speech therapy, feeding therapy, and water therapy. E.T. will need continuously oversight because his GI system is permanently impacted, he needs a special diet, and he is sometimes fed through a feeding tube to meet required daily nutrition. Foster Mother testified she is retired and present at home "full time." Arguelles testified that the foster's family understanding and grasp of E.T.'s conditions was "fantastic"; E.T.'s medical outlook is better with Foster Mother; E.T. is thriving under Foster Mother's care and has made "significant" improvements since being under her care; and E.T. is "really as healthy as he can be given all his diagnoses . . . ." We conclude there is legally sufficient evidence that termination of Mother's parental rights was in E.T.'s best interest. *See In re J.F.C.*, 96 S.W.3d at 266.

As to factual sufficiency, while there is evidence that Mother maintained a

13

job and suitable housing, completed the majority of her family service plan, attended visits, and demonstrated an ability to care for a few of E.T.'s medical needs, viewing the evidence as a whole, a reasonable factfinder could form a firm belief or conviction that termination of Mother's parental rights was in E.T.'s best interest. The extent and severity of E.T.'s medical needs, the lack of Mother's support system in the United States, and the evidence that Mother did not understand E.T.'s conditions, including the testimony that Mother left E.T. unattended for over four hours alone in a crib, weigh in favor of the trial court's finding that termination of Mother's parental rights was in E.T.'s best interest. A trier of fact could have reasonably inferred that Mother's past inattention to E.T.'s medical needs would continue and that her future plans for E.T.'s medical care were unrealistic. *See In re J.D.*, 436 S.W.3d at 120. Foster Mother has provided a stable, caring environment for E.T. and has ensured he receives medication and appropriate therapy and medical care. *See In re L.G.R.*, 498 S.W.3d 195, 205–06 (Tex. App.—Houston [14th Dist.] 2016, pet. denied); *see also In re J.R.W.*, No. 14-12-00850-CV, 2013 WL 507325, at *9 (Tex. App.—Houston [14th Dist.] Feb. 12, 2013, pet. denied) (mem. op.). The evidence is factually sufficient. *See In re A.C.*, 560 S.W.3d at 631.

We overrule Mother's third issue.[5]

---

[5] We note that Mother's arguments and issues on appeal focus on the trial court's termination of her parental rights to E.T., not the appointment of the Department as the permanent managing conservator of her other four children. In the prayer section of her brief, Mother states "[t]here is no reason . . . that the Department should now be appointed permanent managing conservator" and asks that we reverse the trial court's judgment in its entirety. We conclude that any challenge by Mother to the appointment of the Department as the permanent managing conservator of her four other children is waived because Mother does not identify this argument anywhere else in her brief, presents no standard of review or applicable law in support of this contention, and does not advance any argument articulating why the trial court abused its discretion when it appointed the Department as the permanent managing conservator of her four other children. *See* Tex. R. App. P. 38.1 (f) ("The brief must state concisely all issues or points

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

In her fourth issue, Mother argues her trial counsel rendered ineffective assistance.

### A. APPLICABLE LAW

The statutory right to counsel in parental-rights termination cases embodies the right to effective counsel. *In re M.S.*, 115 S.W.3d 534, 544 (Tex. 2003).

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* at 545; *see also In re E.R.W.*, 528 S.W.3d 251, 262 (Tex. App.—Houston [14th Dist.] 2017, no pet.) ("To meet [the test's] second prong, Mother must show a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different.").

With respect to whether counsel's performance in a particular case is deficient, we must take into account all of the circumstances surrounding the case, and must primarily focus on whether counsel performed in a "reasonably effective" manner. *In re M.S.*, 115 S.W.3d at 545. We give great deference to counsel's performance, indulging a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, including the possibility that counsel's actions are strategic. *Id.* It is only when the conduct was so outrageous

---

presented for review."), (i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."); *see also*, *In re R.R.A.*, 654 S.W.3d 535, 553–55 (Tex. App.—Houston [14th Dist.] 2022, pet. granted) (reviewing the appointment of the Department as permanent managing conservator).

that no competent attorney would have engaged in it that the challenged conduct will constitute ineffective assistance. *In re D.T.*, 625 S.W.3d 62, 74 (Tex. 2021).

We will not speculate to find trial counsel ineffective when the record is silent on counsel's reasoning or strategy. *Robinson v. State*, 16 S.W.3d 808, 813 n.7 (Tex. Crim. App. 2000). On a silent record, we assume counsel's actions were due to any strategic motivation that can be imagined. *Id.*

## B.    ANALYSIS

Mother advances multiple bases in support of her argument that her trial counsel rendered ineffective assistance.

Mother first argues that her counsel was ineffective by asking her a self-incriminating question; however, the complained-of question was asked by the Department's counsel, not Mother's counsel. In her reply brief, Mother argues that no effective counsel would have permitted Mother to provide the response to the Department's question, which concerned the events of the day the children were taken into the Department's care. Assuming without deciding that this complained-of conduct was deficient, we conclude that the outcome would not have been different because the same evidence was admitted through other witnesses. Mother also argues that counsel was ineffective by failing to object to the admission of Arguelles's report to the court and the Department's permanency report to the court. An attorney can reasonably decide not to object to inadmissible evidence. *Newsom v. Dep't of Fam. & Servs.*, No. 01-09-00447-CV, 2010 WL 670568, at *8 (Tex. App.—Houston [1st Dist.] Feb. 25, 2010, no pet.) (mem. op.); *see, e.g.*, *Lyons v. McCotter*, 770 F.2d 529, 534 (5th Cir.1985) (noting that the decision "[t]o pass over the admission of prejudicial and arguably inadmissible evidence may be strategic . . . ."). Here, the record is silent as to trial counsel's reasoning for not objecting. *See Rylander v. State*, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003)

(noting that "the record is silent as to why appellant's trial counsel took or failed to take the actions," that "trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective," and concluding that appellant failed to establish ineffective assistance); *Robinson*, 16 S.W.3d at 813 n.7 ("[I]n many cases where an appellant does not litigate the ineffective assistance claim before the trial court, the proper procedure will be for the appellate court to overrule an appellant's Sixth Amendment claim without prejudice to appellant's ability to dispute counsel's effectiveness collaterally.").

Mother argues next her counsel was ineffective by failing to challenge evidence supporting termination under subsection (O) and by failing to assert the affirmative defense to termination under subsection (O). *See* Tex. Fam. Code Ann. § 161.001(b)(1)(O), (d). However, assuming arguendo counsel was deficient, as Mother argues, regarding subsection (O), the results of the proceeding would not have been different because there was sufficient evidence to terminate Mother's parental rights to E.T. under subsection (D). *See In re E.R.W.*, 528 S.W.3d at 263.

Mother also argues that counsel was ineffective because she was never informed of her responsibility to introduce evidence supporting the *Holley* factors, was never told what the *Holley* factors were, and trial counsel failed to introduce evidence concerning the *Holley* factors and the best-interest determination. Contrary to Mother's argument, her counsel questioned all witnesses and elicited testimony relevant to the *Holley* factors and the best interest determination, including evidence about Mother's home, her relationship with the children, and her ability to provide for the children.

Mother argues counsel was inefficient because Mother did not receive a copy of the removal affidavit in Spanish. Mother did not advance this as a basis of her ineffective assistance of counsel claim at the trial court and the record is silent

as to counsel's reasoning. *See Rylander*, 101 S.W.3d at 110–11. It is possible that counsel did not provide Mother with a copy of the affidavit in Spanish because counsel was able to question Mother and gather information regarding the allegations with the affidavit in English. It is also possible that counsel could communicate with Mother in Spanish concerning the contents of the affidavit.

Finally, Mother argues counsel was inefficient because counsel did not file a petition for writ of mandamus arguing there was insufficient evidence to support the trial court's order. Mother bases this argument on the same evidence she points to in her challenge on appeal as to the sufficiency of the evidence. Because we concluded the evidence is sufficient to support the termination of her parental rights to E.T., the filing of a petition for writ of mandamus would not have resulted in a different outcome. Further, Mother had an adequate remedy by direct appeal.

We reject all of Mother's arguments in support of her ineffective assistance claim and overrule her fourth issue.

## VI. MOTION FOR CONTINUANCE

In her fifth issue, Mother argues that the trial court erred by denying the motion for continuance requested by the Department and the attorney ad litem. However, Mother did not join the request for the continuance, did not request a continuance herself, nor did she object to the denial of the continuance requested by the Department and the ad litem. *See* Tex. R. App. P. 33.1(a). Thus, we conclude that this issue has been waived and overrule Mother's fifth issue.

18

## VII. CONCLUSION

The trial court's order is affirmed.

/s/ Margaret "Meg" Poissant
Justice

Panel consists of Chief Justice Christopher and Justices Zimmerer and Poissant.